IN THE DISTRICT COURT OF THE VIRGIN ISLANDS

DIVISION OF ST. CROIX

| | |
|---|---|
| GEORGE T. CYRIL, SR. and<br>EVERETTE S. JONAS,<br><br>Plaintiffs,<br><br>vs.<br><br>JOSE PEREIRA, JR.,<br>JOSE CARRERO,<br>CARIBBEAN SCRAP METAL,<br>CARIBBEAN BARGE, A.R. SAVAGE<br>& SON, LLC, FIRST BANK FLORIDA,<br>ONE STEEL RECYCLING and<br>MARITECH COMMERCIAL, INC.,<br><br>Defendants.<br>_____ | CASE NO. 1:16-cv-00017-WAL-GWC<br><br>ACTION FOR DAMAGES<br><br>JURY TRIAL DEMANDED |

## SECOND AMENDED COMPLAINT

COMES NOW, Plaintiffs GEORGE T. CYRIL, SR. and Everette S. Jonas, by and through undersigned counsel, RONALD E. RUSSELL, ESQ. of The Russell Law Firm, LLP, and hereby files this Second Amended Complaint pursuant to Fed. R. Civ. P. 15 (1)(B) & (2) & (c)(1)(B) to amend the Amended Complaint filed on December 8, 2016 [Document 39] by Plaintiff Cyril against all Defendants. In the interest of justice, the complaint is amended to reinstate Everette S. Jonas as a plaintiff.

PLAINTIFFS sue defendants for the interstate transportation of stolen property and conversion, involving a shipment of scrap metal belonging to plaintiffs, from the Virgin Islands. *See EXHIBIT B (pictures of the scrap metal).* Plaintiffs also sue defendants for breach of contract, misrepresentation, and intentional infliction of emotional distress for causing economic loss,

loss of earnings, mental anguish, and emotional suffering now and into the foreseeable future.

As grounds for this complaint, plaintiffs allege as follows:

INTRODUCTION AND NATURE OF ACTION

1. This is a complaint for damages arising out of the theft, conversion, and interstate transportation of stolen property related to the shipment of stolen scrap metal from the US Virgin Islands to the US mainland.

2. This is a civil action for violations of 18 U.S.C. 1961 et seq. (Racketeer Influenced and Corrupt Organization Act (RICO). RICO addresses the interstate transportation of stolen property.

3. This is an action for violations of 18 USC secs. 2314 and 2315 related to interstate transportation and receipt of stolen property.

4. This is a civil action for conversion, misrepresentation, breach of contract, breach of duty of fair dealing, and intentional infliction of emotional distress.

JURISDICTION AND VENUE

1. This Court has jurisdiction based on diversity of citizenship, 28 USC 1332, i.e., plaintiff was a resident of the Virgin Islands and all defendants are not residents of the US Virgin Islands.

2. Venue is proper in this district pursuant to 28 U.S.C. 1331.

THE PARTIES

1. Plaintiff, GEORGE T. CYRIL, SR., [GC] at all times relevant to this complaint, was a bona fide resident of the United States Virgin Islands.

2. Plaintiff, EVERETTE S. JONAS, at all times relevant to this complaint, was a resident of the Virgin Islands.

3. Defendant CARIBBEAN SCRAP METALS is a buyer and processor of scrap metal located in Miami, Florida, and operates in the Caribbean.

4. Defendant AR SAVAGE & SON is an ocean freight forwarding and maritime advisory services company located in Tampa, Florida.

5. Defendant FIRST BANK FLORIDA is a financial institution located in Florida which produced a false letter stating defendants had money deposited in their bank.

6. Defendant ONE STEEL RECYCLING is a scrap metal company located in Florida.

7. Defendant MARITECH COMMERCIAL, INC. is a marine and scrap surveyor company doing business in Florida and the Caribbean.

8. Defendant JOSE CARRERO [JC] is a scrap metal buyer operating in the Caribbean and the US mainland who buy scrap metal to sell to defendant One Steel.

9. Defendant JOSE PEREIRA, JR., [JP] is a scrap metal buyer operating in the Caribbean and the US mainland who buy scrap metal to sell to defendant One Steel.

THE CORRUPT ENTERPRISE OF THEFT/GRAND LARCENY

1. In April 2010 plaintiffs, George T. Cyril Sr. [GC] and Everett Jonas, owner of Jonas Metal & Recycling, entered an agreement for Jonas Metal & Recycling to purchase scrap metal from George T. Cyril.

2. Everett Jonas, is the owner of Jonas Metal & Recycling, and had well developed business relationship with Defendants AR SAVAGE & SON, ONE STEEL RECYCLING, MARITECH COMMERCIAL, INC., JOSE CARRERO and JOSE PEREIRA, JR., because he was in the business of buying and selling scrap metal and transporting scrap metal to the mainland USA.

3. Plaintiff Everett Jonas [EJ] advised plaintiff George T. Cyril [GC] to transport the scrap metal he was selling to Jonas Metal & Recycling to a barge located at the Gordon A. Finch Molasses Pier for transport to the US for resale.

4. After one day of hauling scrap metal to the barge at the Molasses Pier, GC stopped the truck drivers from loading the scrap metal unto the barge because of payment issues with the owner of the St. Croix property where he stored the scrap metal, and payment from Everett Jonas on behalf of his business.

5. GC authorized Alan Chitolie to use his truck to transport scrap metal but stopped him due to non-payment for the scrap metal.

6. In the afternoon of April 8th 2010 around 1:00 p.m., after the loading had stopped, Allan Chitolie came to GC with three men who identified themselves as Jose Carerro [JC], Jose Pereira, Jr. [JP] and one other individual.

7. JC and JP asked GC to continue loading the barge because they were running out of time for a fully loaded barge to leave St. Croix.

8. GC refused to continue loading the barge, stating that he had to get paid before continuing to load again.

9. JC and JP then promised to pay GC for the full load of all the scrap metal, if he continued to load the barge.

10. Based on this promise to pay for the entire load of scrap metal by JC and JP, both GC and EJ agreed among themselves to accept this arrangement for full payment of all the scrap metal, resolving all the payment issues between George Cyril, Jonas Metal & Recycling and the owner of the storage property.

11. GC then asked the two men to show proof of payment.

12. Both men, JC and JP showed Allan Chitolie a letter from First Bank Florida, appearing to show that they had $800,000.00 in a corporate account that would be used to pay for the scrap metal; Mr. Chitolie confirmed the information to GC.

13. JC and JP stated that they possessed documents that showed proof that they had money in First Bank Florida and both JC and JP promised to pay GC directly.

14. In an effort to reduce the actual weight of all the scrap metal, JP asked GC to bypass the scale, because the barge was running late.

15. GC refused to bypass the scale because he had heard of instances of other caribbean scrap metal dealers being short changed by the draft survey of this barge company.

16. GC did not trust the draft survey.

17. JP then said, "I average that you have about 600 mt"; and GC said no it is around 800 mt, according to what he had purchased.

18. GC then told them that the only way he would continue to load the barge is, if JC and JP agreed to pay based on the average of the trucks' weight.

19. GC agreed to sell directly to JC and JP on these conditions: First, the buyers, JC and JP would pay the full amount of the average weight of the previous weight of the trucks that were weighed in the morning; Second, GC would get paid before the barge left the island; and Third the agreed price would be $160/mt.

20. All three men shook hands, and GC continued to load the barge as agreed.

21. While one of the last GC's trucks was one its way, around 5:30 pm, before it reached the dock the captain of the barge asked Mr. Chitolie to close the barge's loading gate so he could take a survey.

22. The barge captain didn't lower down the gate to complete the loading of the barge.

23. GC waited for the following morning to complete the loading and get paid, however when he sought the barge captain, JP and JC were nowhere to be seen.

24. The barge took off with GC's property, without clearing customs, not clearing the agent who represented them, and not paying GC nor any other persons.

25. GC followed the barge to Tampa Florida where they were unloading the scrap.

26. GC called JP asking him for his money, he told GC to take him to court; he has good lawyers.

27. While in Tampa, GC then went to ONE STEEL RECYCLING where the stolen scrap metal and steel were being unloaded.

28. At ONE STEEL RECYCLING, GC spoke with Mr. Steve Ryan, the general manager of ONE STEEL RECYCLING; GC told Mr. Ryan that the men (JC, JP and others) ONE STEEL RECYCLING and Mr. Ryan were buying the scrap metal and steel from, stole the scrap metal and steel from him and others in the Virgin Islands.

29. GC let Mr. Steve Ryan know that ONE STEEL RECYCLING and Mr. Ryan were buying stolen goods: Mr. Ryan told GC that he would stop payment to the sellers (JC, JP and others), to see if they (JC, JP and others) would pay GC; however, GC did not see or hear from JC, JP, the barge captain and all involved in stealing the scrap metal and steel from him.

30. GC filed and made a local Virgin Islands police report, additionally GC went to the FBI and the US District Attorney in St. Croix to get help since the stolen scrap metal and steel was transported to Tampa, FL.

31. An FBI representative told GC said that the amount was not enough for them to file a case and open an investigation; The US District Attorney told GC to file a civil action against the defendants in a civil court; This action is a result of the advice from the US District Attorney.

**COUNT I – GRAND LARCENY**

32. Plaintiffs re-allege and restate Paragraphs 1 through 31 above as if fully set forth herein.

33. Defendants conspired together to steal plaintiffs' scrap metal by creating a pretext for stealing the scrap metal without paying for it and taking plaintiffs' scrap metal from the Virgin Islands to Florida.

34. The value of the scrap metal is approximately $138,000.00.

35. Defendants' acts constitute theft/grand larceny have caused plaintiffs loss of income, pain and suffering.

## COUNT II -CONVERSION

36. Plaintiffs re-allege and restate Paragraphs 1 through 35 hereinabove as if fully set forth herein.

37. At all times relevant herein, plaintiffs were, and still are, entitled to possession of the scrap metal and steel described herein.

38. On or about April 2010 defendants took plaintiffs' property and converted it to their own use.

39. On or about April and May, 2010, plaintiffs demanded return of the above mentioned property, but defendants failed and refused, and continue to fail and refuse, to return the property to plaintiffs.

40 As a proximate result of defendants' conversion, plaintiffs suffered damages which will continue into the foreseeable future.

## COUNT III

41. Plaintiffs re-allege and restate the allegations contained in paragraphs 1 to 40 herein.

42. Defendants told Plaintiffs they had the money to pay for the scrap metal and steel; however, defendants knew at the time that they made those statements that the statements were not true.

43. Plaintiffs relied on those statements to his detriment.

44. Plaintiffs' scrap metal and steel were taken from the Virgin Islands to Tampa, Florida, causing him severe economic loss and stress.

45. Defendants are liable to plaintiffs for their losses.

## COUNT IV – BREACH OF CONTRACT

46. Plaintiffs re-allege and restate Paragraphs 1 through 45 hereinabove as if fully set forth herein.

47. Plaintiffs contracted with defendants to sell them scrap metal and steel and that they would pay for such scrap metal and steel.

48. Defendants breached this agreement by taking the scrap metal without paying plaintiffs.

49. Defendants' actions constitute breach of contract.

## COUNT IV – BREACH OF GOOD FAITH & FAIR DEALING

50. Plaintiffs re-allege and restate Paragraphs 1 through 49 hereinabove as if fully set forth herein.

51. Virgin Islands law implies a covenant of good faith and fair dealing in all contracts.

52. As a result of defendants' actions they have violated the covenant of good faith and fair dealing and plaintiffs are entitled to damages therefor.

## COUNT V – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

53. Plaintiffs re-allege and restate Paragraphs 1 through 52 hereinabove as if fully set forth herein.

49. Plaintiffs and defendants entered into an agreement regarding the sale of scrap metal and steel.

50. Defendants promised to pay plaintiffs for his scrap metal but instead they took the scrap metal without paying.

51. Defendants' actions were intentional and malicious and done for the purpose of causing plaintiff to suffer humiliation, mental anguish and emotional and physical distress.

52. Defendants' actions make them liable to plaintiffs.

As a result of Defendants' theft, misrepresentation, breach of contract, breach of good faith and fair dealing, and intentional infliction of emotional distress, and their transportation of stolen goods in interstate commerce, Plaintiffs are entitled to damages within the jurisdiction of the Court.

WHEREFORE, Plaintiffs respectfully request that damages be assessed against Defendants and in favor of Plaintiffs for loss of income, injury to reputation, humiliation, suffering and mental anguish, attorney's fees and punitive damages on all five Counts as set forth hereinabove, for such damages as requested, and as the Court deems appropriate, including costs.

Dated: December 7, 2016                     Respectfully Submitted,

                                              THE RUSSELL LAW FIRM, LLP
                                              Counsel for Plaintiffs
                                              By: */s/ Ronald E. Russell, Esq.*
                                              Ronald E. Russell, Esq.
                                              VI Bar No. 86
                                              P.O. Box 3259
                                              Kingshill, VI  00851
                                              Tel:  340-692-0832
                                              Fax: 844-272-0308

Email: canaanlawgroup@gmail.com

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 6th day of March 2017, the foregoing Amended Complaint was electronically filed via ECF system, which will send a notification of such filing (NEF) to the following:

Matthew J. Duensing, Esq.
9800 Buccaneer Mall, Bldg. 2, Ste. 9
St. Thomas, VI  00804

Elise Catera, Esq.
1138 King Street, 3rd Floor
Christiansted, VI  00820

Stefan B. Herpel, Esq.
1000 Frederiksberg Gade
St. Thomas, VI  00804

Charles E. Lockwood, Esq.
1131 King Street, Ste. 204
Christiansted, VI  00820

*/s/ Ronald E. Russell, Esq.*