# EXHIBIT 1

IN THE DISTRICT COURT OF THE VIRGIN ISLANDS

DIVISION OF ST. CROIX

| | |
|---|---|
| GEORGE T. CYRIL, SR. and EVERETTE S. JONAS, | )<br>)<br>) |
| Plaintiffs, | )<br>) CASE NO. 1:16-cv-00017-WAL-GWC<br>) |
| vs. | ) MARITIME CAUSES OF ACTION<br>) |
| JOSE PEREIRA, JR., JOSE CARRERO, CARIBBEAN SCRAP METAL, CARIBBEAN BARGE, A.R. SAVAGE & SON, LLC, FIRST BANK FLORIDA, ONE STEEL RECYCLING and MARITECH COMMERCIAL, INC., | ) JURY TRIAL DEMANDED<br>)<br>)<br>)<br>)<br>)<br>) |
| Defendants. | ) |

## DECLARATION OF JÓSE CARRERO

I, Jóse Carrero, pursuant to 28 U.S.C. § 1746 and V.I. R. Civ. P. 84(b), under the penalties of perjury, declare that the following is true and correct:

1. I am competent to make this declaration, and the facts set forth herein are made on the basis of personal knowledge.

2. My first name is Jóse, but I usually go by the name "Joe." I reside in Miami, Florida.

3. I am a managing member of a business known as Intermetal USA, L.L.C. ("Intermetal"), which operates out of Miami, Florida. Intermetal is engaged in the purchase and sale of scrap metal. Intermetal had nothing to do with the transaction that is the subject of this Complaint, and is not named in it.

4. A friend and business associate of mine, Jóse Pereira, owns a company

known as Seacape Shipping & Trading, LLC ("Seacape"). Seacape is in the business of purchasing and selling steel products, including but not limited to scrap metal.

5. On or about March 29, 2010, Seacape entered a contract with Jonas Scrap Metal & Recycling ("Jonas Scrap") to purchase scrap metal from Jonas Scrap that was located in the Virgin Islands. See Seacape/Jonas Scrap contract, attached as Exhibit A. An individual named Everette Jonas signed the contract on behalf of Jonas Scrap, and Jóse Pereira signed it on behalf of Seacape.

6. Under the contract, Jonas Scrap was obligated to sell to Seacape 4,500 metric tons of scrap metal that met certain specifications, and to load the scrap metal on a vessel at a pier in St. Croix. See Exhibit A, ¶¶ 2, 3, and 6.

7. The contract also provided that the buyer had a right to inspect the scrap metal in the Virgin Islands before it was shipped, in order to ensure that it met the specifications set forth in the contract. See Exhibit A, ¶2.

8. Seacape, through Pereira, engaged me to come to the Virgin Islands to assist Pereira in inspecting the scrap and facilitating its shipment from St. Croix.

9. I did come to the Virgin Islands in April 2010, for a short time, and assisted Pereira in inspecting the scrap metal and facilitating its shipment from St. Croix to Florida. While I was in St. Croix, I recall meeting with Everette Jonas, the owner of Jonas Scrap, the party who contracted with Seacape. I have no recollection of meeting with George Cyril, and have no knowledge of his relationship, if any, with Jonas Scrap.

10. I am not a party to the Seacape contract with Jonas Scrap. I had no authority to agree with Jonas Scrap to any alteration of any of the terms of that contract, and I never did so in any conversation or writing with Everette Jonas or any other

person.

11. Jonas Scrap was paid a deposit of $65,000, and thereafter, on or about April 12, 2010, was paid an additional sum of $45,298.47 for the scrap metal that was loaded and shipped to Florida from St. Croix. The computations to arrive at the $45,298.47 figure are based on the terms of the Seacape/Jonas Scrap contract and the weight of the material shipped. Those computations were provided to Everette Jonas on April 12, 2010.

12. In subsequent email correspondence between Everette Jonas and Pereira, Jonas stated that an additional amount of $15,000 was owed for the sale of the scrap to Seacape, over and above the amounts already paid (i.e., the $110,298.47 referenced in the preceding paragraph). In response, Pereira advised Jonas, in part, that another individual had demanded payment from him for the scrap metal, on the basis that Jonas had never paid him for the material, and that as long as such a claim could potentially be asserted, no additional payments could be made to Jonas Scrap.

13. Because the only parties to the contract were Jonas Scrap and Seacape, there is no factual or legal basis in the Second Amended Complaint for asserting claims against me, individually, or against Caribbean Scrap, LLC (misnamed as Caribbean Scrap Metals in the Complaint). Caribbean Scrap, LLC is a limited liability company in which I am the sole member that is no longer active.

Dated: October 13, 2017

_____
Jóse Carrero