| DISTRICT COURT OF THE VIRGIN ISLANDS |
|---|
| DIVISION OF ST. CROIX |

**GEORGE T. CYRIL, EVERETTE S. JONAS,**

    **Plaintiffs,**

  **v.**

**JONAS PEREIRA, JR., JOSE CARRERO, CARIBBEAN SCRAP METAL, CARIBBEAN BARGE, A.R. SAVAGE & SONS, FIRST BANK FLORIDA, ONE STEEL RECYCLING, and MARITECH COMMERCIAL INC.,**

    **Defendants.**

**1:16-cv-00017**

TO:  Ronald E. Russell, Esq.
    Charlotte K. Perrell, Esq.
    Stefan B. Herpel, Esq.
    Elise Catera, Esq.
    Warren B. Cole, Esq.
    Charles Edward Lockwood, Esq.
    Matthew J. Duensing, Esq.

## REPORT AND RECOMMENDATION

THIS MATTER is before the Court upon the Order (Dkt. No. 95) of Judge Wilma A. Lewis in 1:16-cv-00017 referring Defendant Maritech Commercial, Inc.'s Motion to Dismiss Amended Complaint (Dkt. No. 59), Defendant Firstbank Florida's Motion to Dismiss Second Amended Complaint (Dkt. No. 66), Defendant OneSteel Recycling's Motion to Dismiss Second Amended Complaint (Dkt. No. 67), and Defendant José Carrero's and Caribbean Scrap, LLC's Motion for Summary Judgment. (Dkt. No. 69). For the reasons stated below, the undersigned **RECOMMENDS** dismissal of Plaintiffs George T. Cyril's and Everette S. Jonas's Second

*George Cyril, et al. v. Jose Pereria, et al.*
Report and Recommendation
1:16-cv-00017
Page 2

Amended Complaint (Dkt. No. 65) in its entirety under Fed. R. Civ. P. 12 (b)(6) for failure to

plead a plausible RICO claim.

## I. Background

This is an action brought under the Racketeer Influenced and Corrupt Organization

Act, 18 U.S.C. §§ 1961-68, in which Plaintiffs George T. Cyril and Everette S. Jonas allege that

Defendants José Carrero and Jose Pereira, Jr. took scrap metal without paying them,

transported it from St. Croix to Tampa, Florida, and then resold it to Defendant One Steel

Recycling. The undersigned will recount the relevant facts and posture to the pending

motions below.

In April 2010, Plaintiffs Cyril and Jonas, owner of Jonas Metal & Recycling, entered

into an agreement for Jonas's company to purchase Cyril's scrap metal.[1] Jonas[2] advised Cyril

to transport scrap metal that he was selling to a barge at the Gordon A. Finch Molasses Pier.

Following one day of transporting scrap metal to this barge, Cyril had to tell Alan Chitolie, a

truck driver he hired, to stop loading because of payment issues with the owner where he

stored this scrap metal and with Jonas Metal & Recycling.[3]

After Chitolie stopped loading, he came to Cyril accompanied by José Carrero, Jose

Pereira, Jr., and one other individual.[4]  Carrero and Pereira asked Cyril to continue loading

---

[1] All facts derive from the Second Amended Complaint. (Dkt. No. 65).
[2] References to Jonas will refer to the Plaintiff, while references to Jonas Metal & Recycling will be phrased in its totality or as "company" to avoid confusion.
[3] Because of how the sentence is worded in the complaint, it is unclear whether Cyril also had payment issues with Jonas on behalf of Jonas Metal & Recycling (Dkt. No. 65 at 4 ¶ 4), but a later sentence in the complaint makes it clear that Cyril also had payment issues with Jonas Metal & Recycling. (Dkt. No. 65 at 5 ¶ 10).
[4] The complaint does not identify this individual. (Dkt. No. 65 at 4 ¶ 6).

the barge with scrap metal because they were running out of time before having to leave St. Croix. Cyril refused to continue loading the barge until he received full payment for doing so. Carrero and Pereira promised to pay Cyril if he continued to load the barge.

Based on this promise by Carrero and Pereira, Cyril and Jonas agreed to continue loading the barge for full payment of all the scrap metal, which also resolved the pending payment issues among Cyril, Jonas Metal & Recycling, and the owner of the space where Cyril stored the scrap metal on St. Croix. Following this agreement between Cyril and Jonas, Cyril requested proof of payment from Carrero and Pereira. Carrero and Pereira then showed Chitolie—who had been driving a loading truck from the storage space to the barge—a letter from FirstBank Florida showing $800,000.00 in a corporate account. Chitolie then confirmed this information to Cyril.

Carrero and Pereira then asked Cyril to bypass a scale used to weigh the scrap metal because they were running late to fully load the barge and leave St. Croix. Cyril refused to bypass the scale because he feared being shortchanged by the draft survey of Carrero and Pereira. Ultimately, Cyril agreed to sell scrap metal to Carrero and Pereira on the condition that they would pay the full amount of the average weight of the previous weight of the trucks that were weighed in the morning, that Cyril would receive full payment before the barge left St. Croix, and that the agreed price would be $160/mt.[5] After shaking hands with Carrero and Pereira, Cyril continued to load the barge.

---

[5] Mt is the abbreviation for metric ton.

*George Cyril, et al. v. Jose Pereria, et al.*
Report and Recommendation
1:16-cv-00017
Page 4

While Chitolie neared completion of loading the barge for the day, the dock captain of the barge asked Chitolie to close the barge's loading gate so that so that the dock captain could take a survey of the scrap metal.[6]

The following morning, Cyril waited to complete loading of the barge and to receive full payment. But when he sought the barge captain, Carrero and Pereira were not present. Carrero and Pereira left with the loaded barge of scrap metal without paying Cyril.

Cyril then followed the barge to Tampa, Florida where the scrap metal was being unloaded by One Steel Recycling. Cyril also called Pereira asking for payment, but Pereira told him to take him to court and that he had good lawyers. Also, while at One Steel Recycling, Cyril spoke with Steve Ryan, the general manager of the company, to tell Ryan that he had bought stolen scrap metal from Carrero and Pereira. Ryan told Cyril that he would stop payment of the scrap metal to Carrero, Pereira, and others, and see if Carrero, Pereira, and others would pay Cyril for the scrap metal.[7] Cyril never heard from Carrero, Pereira, and all others involved in this situation.

Cyril and Jonas bring this civil action for violation of the Racketeer Influenced and Corruption Organization Act, 18 U.S.C. § 1961 *et seq*., including two predicate acts of racketeering under 18 U.S.C. §§ 2314-15 (interstate transportation and receipt of stolen

---

[6] The next sentence of the complaint states that the barge captain did not lower the gate, so, as drafted, it is unclear whether Chitolie was tasked with lowering the barge's loading gate or the dock captain of the barge. (Dkt. No. 65 at 6 ¶¶ 21-22).

[7] The complaint does not identify other sellers involved in the sale of the scrap metal to One Steel Recycling. (Dkt. No. 65 at 7 ¶ 29).

*George Cyril, et al. v. Jose Pereria, et al.*
Report and Recommendation
1:16-cv-00017
Page 5

property). Cyril and Jonas also bring six local law claims of grand larceny[8] (count I), conversion (count II), misrepresentation (count III),[9] breach of contract (count IV), breach of good faith and fair dealing (count V)[10], and intentional infliction of emotional distress (count VI).[11]

Defendants Maritech Commercial, Inc., FirstBank Florida, and One Steel Recycling move to dismiss,[12] while Defendants José Carrero and Caribbean Scrap, LLC, move for summary judgment (Dkt. Nos. 59, 66, 67, and 69).

In particular, Defendants Maritech Commercial, Inc. and FirstBank Florida move to dismiss for failure to state a claim under Rule 12 (b)(6).[13] Maritech argues that Cyril and Jonas fail to state a claim because they do not explain how the draft survey was in any way inaccurate to constitute deceit or fraud. (Dkt. No. 59 at 2).[14] Maritech also argues that Cyril

---

[8] The undersigned would like to point out that grand larceny is not a civil action. Presumably, Cyril and Jonas meant to plead a claim for civil larceny, but they did not make out—nor explain the existence of—this claim.

[9] Cyril does not name this count in his complaint, but presumably he meant misrepresentation because he listed this claim a few pages beforehand in the complaint. (Dkt. No. 65 at 2, 8).

[10] Cyril and Jonas repeated count IV twice, so, for accuracy, the undersigned words breach of good faith and faith dealing as count V. (*see* Dkt. No. 65 at 9).

[11] For accuracy, although Cyril and Jonas word this count as V because of the repetition of count IV twice, the undersigned words intentional infliction of emotional distress as count VI. (*see* Dkt. No. 65 at 9).

[12] Maritech Commercial, Inc. moves to dismiss the First Amended Complaint (Dkt. No. 59), while FirstBank Florida and One Steel Recycling move to dismiss the Second Amended Complaint (Dkt. Nos. 66, 67). In addition, Maritech Commercial, Inc. moves to dismiss under Rule 12 (b)(6), FirstBank Florida moves to dismiss under Rule 12 (b)(2) and 12 (b)(6), and OneSteel moves to dismiss under Rule 12 (b)(2) and 12 (b)(5).

[13] Because the undersigned recommends dismissal under Rule 12 (b)(6) for failure to state a claim under the RICO, he will not entertain requests for dismissal under Rules 12 (b)(2), 12 (b)(5), or for summary judgment under Rule 56. Accordingly, the Court will focus on 12 (b)(6) arguments brought forth by Maritech Commercial, Inc. and FirstBank Florida, and then pinpoint the deficiencies in the Second Amended Complaint in relation to the RICO.

[14] Maritech further argues that, based on the allegations in the amended complaint, Pereira made representations about the weight of scrap metal before parties agreed to average the weight and agree upon other sale terms. *Id*. Maritech then argues that the parties left without paying it for conducting the draft survey. *Id*.

*George Cyril, et al. v. Jose Pereria, et al.*
Report and Recommendation
1:16-cv-00017
Page 6

and Jonas have failed to meet the requirements for pleading fraud under Rule 9(h). *Id*. at 3.[15]

Maritech also argues that Cyril's and Jonas's claims are barred by the statute of limitations

under 46 U.S.C. § 30106.[16] Cyril and Jonas respond that they do plead a plausible claim

because they were in the process of selling scrap metal to Maritech, among other defendants,

but it, along with the others, took the scrap metal and transported it to Florida without

paying them. (Dkt. No. 79 at 3). Maritech replies that it played no role in the transaction for

which Cyril and Jonas allege interstate transportation and receipt of stolen property because

the company was merely hired as a surveyor to weigh the scrap metal as it was loaded on

the barge. (Dkt. No. 86 at 1-2).

In its motion, FirstBank Florida argues that Cyril and Jonas failed to state a claim

under Fed. R. Civ. P. 12 (b)(6) but does not extrapolate further from there. (Dkt. No. 66 at 1).

Cyril and Jonas respond that FirstBank's assertion that it had not dealt with them does not

---

[15] Rule 9(h) relates to pleading fraud in admiralty or maritime claims, which is no longer applicable to the amended and the second amended complaints which plead claims arising under the RICO. The original complaint alleged a maritime claim (*see* Dkt. No. 45-1), but the first and second amended complaints did away with maritime claims. (*see generally* Dkt. Nos. 45, 65). Thus, the undersigned will not address any argument as to Rule 9(h) going forward.

[16] 46 U.S.C. § 30106 relates to the statute of limitations for bringing a maritime action for personal injury, so, as mentioned in the previous footnote, this argument will not be addressed because the current action is not one for maritime.

In addition, Maritech argues that Cyril and Jonas fail to plead plausible local law claims, including for breach of good faith and fair dealing and for intentional infliction of emotional distress. As will be addressed later in the report and recommendation, the undersigned will recommend dismissal of the RICO claim, for which the court has original jurisdiction. Thus, it will also recommend that the court not exercise supplemental jurisdiction under local law claims. Accordingly, the undersigned will not spend time deconstructing arguments regarding local law claims.

As to FirstBank Florida's motion to dismiss, the Court will also focus on arguments that relate to RICO claims as opposed to local law claims.

*George Cyril, et al. v. Jose Pereria, et al.*
Report and Recommendation
1:16-cv-00017
Page 7

make sense because they received a letter from Carrero and Pereira entailing a corporate bank account with FirstBank with a balance of $805,000.00,[17] for which Cyril and Jonas relied on to allow defendants to load the barge. (Dkt. No. 80 at 3). FirstBank responds that Cyril and Jonas filed an untimely opposition without consent of the parties or the court, which should be striken under Fed. R. Civ. P. 12 (f). (Dkt. No. 85 at 1).

These motions are presently before the undersigned for Report and Recommendation to the District Judge.

## II. Discussion

### A. Applicable legal principles

#### a. Standard of review

Federal Rule of Civil Procedure 12 (b)(6) calls for dismissal of a complaint if it "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12 (b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The Third Circuit, as articulated in *Connelly v. Lane Const. Corp.*, follows the analysis established by the Supreme Court in *Bell Atlantic v. Twombly* and *Ashcroft v. Iqbal* when considering a motion under Rule 12 (b)(6):

---

[17] The complaint alleges that the corporate bank account from FirstBank had $800,000.00. (Dkt. No. 65 at 5 ¶ 12).

*George Cyril, et al. v. Jose Pereria, et al.*
Report and Recommendation
1:16-cv-00017
Page 8

> Under the pleading regime established by *Twombly* and *Iqbal*, a court reviewing the sufficiency of a complaint must take three steps. First, it must "tak[e] note of the elements [the] plaintiff must plead to state a claim." Second, it should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.' Finally, '[w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.'

*Connelly*, 809 F.3d 780, 787 (3d Cir. 2016) (quoting *Iqbal*, 556 U.S. at 679) (internal citations omitted). *See also Warren Gen. Hosp. v. Amgen Inc.*, 643 F.3d 77, 84 (3d Cir. 2011) (stating that when ruling on a motion to dismiss for failure to state a claim under Rule 12 (b)(6), courts accept a plaintiff's "factual allegations as true, [and] construe the complaint in the light most favorable to the plaintiff.") (internal quotation and citation omitted).

At the Rule 12 (b)(6) stage, "courts generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record." *Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993) (internal citations omitted).

Under the Judicial Improvements Act of 1990, the District Court has supplemental jurisdiction over local law claims under 28 U.S.C. § 1367 (a) if these claims arise under the same nucleus of operative facts as federal claims. 28 U.S.C. § 1367 (a); *see Lyon v. Whisman*, 45 F.3d 758, 760 (3d Cir. 1995) (quoting *United Mine Workers v. Gibbs*, 383 U.S. 715, 725 (1966)). Supplemental jurisdiction is discretionary, and the District Court may refuse to exercise discretion when it "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). The District Court may, "in exceptional circumstances," refuse to

*George Cyril, et al. v. Jose Pereria, et al.*
Report and Recommendation
1:16-cv-00017
Page 9

exercise discretion to entertain pendant state law claims when "there are other compelling

reasons for declining jurisdiction." 28 U.S.C. § 1367 (c)(4).

In the absence of extraordinary circumstances, a federal court may not "exercise

supplemental jurisdiction over state law claims when the anchor federal claims are subject

to dismissal under Rule 12(b)(6)." *Solomon v. Passaic Cnty. Educ. Servs. Comm'n*, Civ. No. 04-

5879, 2005 U.S. Dist. LEXIS 36971, at *14-15 (D.N.J. Sept. 13, 2005) (citing *Cito v. Bridgewater

Twp. Police Dep't*, 892 F.2d 23, 25 (3d Cir. 1989); *Tully v. Mott Supermarkets, Inc.*, 540 F.2d

187, 196-97 (3d Cir. 1976)). "This is because the primary justification for exercising pendant

jurisdiction is missing if the substantial federal claim to which the state counts could be

appended is no longer viable." *Weaver v. Marine Bank*, 683 F.2d 744, 746 (3d Cir. 1982).

Accordingly, when the only federal claim has been dismissed, the District Court may also

dismiss the state law claims. *Id.*; *see also Growth Horizons, Inc. v. Delaware Cnty., Pa.*, 983 F.2d

1277, 1284 (3d Cir. 1993) (stating that declining to exercise supplemental jurisdiction is

warranted when the court has dismissed all claims over which it has original jurisdiction).

In making its determination, the District Court considers generally accepted principles of

judicial economy, convenience, and fairness to the litigants. *Growth Horizons, Inc.*, 983 F.2d

at 1284.

### b.  Amended complaints and mooting motions to dismiss

Generally, amended pleadings supersede the original pleading and renders the prior

pleading a nullity. *Garrett v. Wexford Health*, 938 F.3d 69, 82 (3d Cir. 2019) (citations

omitted); *see also United States of Am. For the USE of Heavy Materials, LLC v. Tip Top Constr.*

*George Cyril, et al. v. Jose Pereria, et al.*
Report and Recommendation
1:16-cv-00017
Page 10

*Corp.*, Civil Action No. 2015-0008, 2016 U.S. Dist. LEXIS 66434, at *8 n.16 (D.V.I. May 20, 2016) (holding that "[b]ecause the First Amended Complaint is the operative pleading in this case, the Court will deny as moot Defendant's Motion to Dismiss Plaintiff's Original Complaint."); *Josse v. United States*, Civil Action No. 2011-013, 2013 U.S. Dist. LEXIS 4604, at *1 n.1 (D.V.I. Jan. 11, 2013) (holding that "[i]n view of Plaintiff's filing of the Second Amended Complaint, the Court will deny as moot VIPA's Motion to Dismiss the First Amended Complaint."). However, when a complaint has been amended while a motion to dismiss is pending, "the district court has the option of either denying the pending motion as moot or evaluating the motion in light of the facts alleged in the amended complaint." *Pettaway v. Nat'l Recovery Sols., LLC*, 955 F.3d 299, 303-04 (2d Cir. 2020). It is not a requirement that defendants must "file a new motion to dismiss simply because an amended complaint was introduced while their motion was pending. If some of the defects raised in the original motion remain in the new pleading, the court simply may consider the motion as a being addressed in the amended pleading." *Jordan v. City of Philadelphia*, 66 F. Supp. 2d 648, 641 n.1 (E.D. Pa. 1999) (quoting 6 Charles A. Wright, Arthur R. Miller, and Mary Kay Kane, Federal Practice and Procedure § 1476 at 558 (2nd ed. 1990)) (internal quotation marks omitted).

### c. RICO claims

To state a claim under the RICO, private parties must allege (1) the conducting of (2) an enterprise (3) through a pattern (4) of racketeering. *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985); 18 U.S.C. § 1962(c). Private parties must also allege that an injury to

*George Cyril, et al. v. Jose Pereria, et al.*
Report and Recommendation
1:16-cv-00017
Page 11

business or property occurred that was proximately caused by the RICO violation to have standing for suit. *Id.* at 496.

Also, private parties must allege that defendants committed at least two predicate acts of racketeering, which include, among others, violations of federal law forbidding interstate transportation and receipt of stolen and fraudulently obtained goods. 18 U.S.C. §§ 2314-2315.[18] Yet "[p]leading two predicate offenses is insufficient in and of itself—a plaintiff must plead that predicate offenses proximately causes a violation of Section 1962(c)." *Kyko Global, Inc.*, 2020 U.S. Dist. LEXIS 118043, at *31 (citing *Baglio v. Baska*, 940 F. Supp. 819, 833 (W.D. Pa. 1996)).

To show a violation of § 1962(c), private parties must plead that defendants "conduct or participate, directly or indirectly, in the conduct of [the] enterprise's affairs through a

---

[18] "[T]he federal statute against transporting stolen property makes it a crime to transport, transmit, or transfer in interstate or foreign commerce any goods, wares, merchandise, or money of more than $ 5,000 value, knowing the same to have been stolen, converted or taken by fraud. 18 U.S.C. § 2314. The statute against receiving stolen property makes it a crime to receive, possess, conceal, store, sell, barter, or dispose of any goods[,] wares, merchandise, or money of more than $ 5,000 value, which have crossed a State or United States boundary after being stolen, unlawfully converted, or taken. 18 U.S.C. 201[5]." *Freedom Med., Inc. v. Gillespie*, 634 F. Supp. 2d 490, 509 n.8 (citing 18 U.S.C. §§ 2314-15).

The main distinction vis-à-vis "§ 2315 and § 2314 is that the former focuses on receipt of such goods, [and] the latter on the interstate transportation of such goods." *United States v. Tashjian*, 660 F.2d 829, 840 (1st Cir. 1981).

There exist two elements under the National Stolen Property Act of 1934, 18 U.S.C. §§ 2314 *et seq.*: "(1) interstate transportation of stolen, converted, or fraudulently taken [property] of at least $5,000.00 value; and 2) with fraudulent intent." *United States v. Freeman*, 619 F.2d 1112, 1118 (5th Cir. 1980) (citing *United States v. Driscoll*, 454 F.2d 792, 797 (5th Cir. 1972)); *see also Kyko Global, Inc. v. Prithvi Info. Sols. Ltd.*, Civil Action No. 2:18-cv-01290-WSS, 2020 U.S. Dist. LEXIS 118043, at *28 (stating that plaintiff pled a violation of NSP Section 2314 by alleging that "[d]efendants *knew* that the Bonds funds that they transferred away from PSI were stolen and converted." (emphasis added)).

*George Cyril, et al. v. Jose Pereria, et al.*
Report and Recommendation
1:16-cv-00017
Page 12

pattern of racketeering activity." 18 U.S.C. § 1962(c).[19] To plead a pattern of racketeering

activity, a complaint must allege that defendants committed at least two acts of prohibited

racketeering, for which those predicate acts are related and amount to or pose a threat of

continued criminal activity. *United States v. Bergrin*, 650 F.3d 257, 267 (3d Cir. 2011). It is

also necessary to plead relatedness of predicate acts of racketeering and continuity of these

acts to establish a pattern of racketeering activity. *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229,

239 (1989). To plead relatedness of predicate acts, these acts must "have the same or similar

purposes, results, participants, victims or methods of commission, or otherwise are

interrelated by distinguishing characteristics and not isolated events." *Id.* at 240.

To plead continuity of predicate acts, private parties may allege "(1) closed-ended

continuity, and (2) open-ended continuity." *Bergrin*, 650 F.3d at 267. A plaintiff can show

close-ended continuity by alleging, "'a series of related predicates extending over a

substantial period of time.'" *Id.* at 267 (citation omitted). Showing open-ended continuity

"depends upon whether a 'threat of continuity is demonstrated.'" *Id*. (emphasis in original

and citation omitted). Analyzing continuity is fact specific, "but predicate acts extending over

a few weeks or a month and threatening no future criminal conduct do no satisfy this

requirement." *H.J. Inc.*, 492 U.S. at 242; *United States v. Pelullo*, 964 F.2d 193, 209-10 (3d Cir.

---

[19] A RICO enterprise is defined as "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). To establish the existence of an enterprise, a plaintiff must show evidence of an ongoing organization, formal or informal; evidence that the various associates of the enterprise function as a continuing unit; and evidence that the enterprise has an existence separate and apart from the pattern of activity in which it engages. *United States v. Riccobene*, 709 F.2d 214, 221 (3d Cir. 1983) (citing *United States v. Turkette*, 452 U.S. 576, 583 (1981)).

*George Cyril, et al. v. Jose Pereria, et al.*
Report and Recommendation
1:16-cv-00017
Page 13

1992). The Third Circuit has held that predicate acts will satisfy the continuity requirement when they evince "long-term criminal conduct," or where "it is shown that predicates are a regular way of conducting defendant's ongoing legitimate business." *Tabas v. Tabas*, 47 F.3d 1280, 1293 (3d Cir. 1995). Also, periods of less than one year of are not "substantial periods of time" to form a RICO pattern. *Tabas*, 47 F.3d at 1293; *see also Marshall-Silver Constr. Co. v. Mendel*, 894 F.2d 593 (3d Cir. 1990), *overruled on other grounds* by *Tabas v. Tabas*, 47 F.3d 1230 (3d Cir. 1995), (finding that a RICO action involving a single victim, a single injury, and a short-lived scheme with few active perpetrators did not satisfy continuity).

### d. Rule 9(b) and pleading predicate racketeering acts under 18 U.S.C. §§ 2314-15 sounding in fraud

Generally, a plaintiff must provide a short and plain statement of their claim showing entitlement to relief. Fed. R. Civ. P. 8(a)(2). However, when a plaintiff pleads a fraud claim or a claim "sounding in fraud," however, Rule 9(b)'s heightened pleading standard applies. *Kyko Global, Inc.*, 2020 U.S. Dist. LEXIS 118043, at *25. Under Rule 9(b), "[i]n alleging fraud or mistake, a party must state with particularity the circumstances consisting fraud or mistake." Fed. R. Civ. P. 9(b).

The Third Circuit has decided that certain times warrant "a more flexible interpretation of Rule 9(b)." *Kyko Global, Inc. v. Prithvi Info. Sols. Ltd.*, Civil Action No. 2:18-cv-01290-WSS, 2020 U.S. Dist. LEXIS 118043, at *26 (W.D. Pa. July 6, 2020) (referencing *Seville Indus. Mach. Corp. v. Southmost Mach. Corp.*, 742 F.2d 786, 791 (3d Cir. 1984); *Christidis v. First Penn. Mortg. Trust*, 717 F.2d 96, 100 (3d Cir. 1983); *Klapper v. Com. Realty*

*George Cyril, et al. v. Jose Pereria, et al.*
Report and Recommendation
1:16-cv-00017
Page 14

*Trust*, 657 F. Supp. 948, 959 (D. Del. 1987)). The rule for applying a flexible application of Rule 9(b) derives from *Shapiro v. UJB Fin. Corp.*, 964 F.2d 272 (3d Cir. 1992), and *Craftmatic Sec. Litig. v. Kraftsow*, 890 F.2d 628, 645 (3d Cir. 1989). The rule from *Shapiro* and *Craftmatic* is that when a plaintiff seeks a flexible application of Rule 9(b), its "'complaint must delineate at least the nature and scope of plaintiffs' effort to obtain, before filing the complaint, the information needed to plead it with particularity.'" *Kyko Global, Inc.*, 2020 U.S. Dist. LEXIS 118043, at *26 (citing *Shapiro*, 964 F.2d at 285; *Craftmatic*, 890 F.2d at 645). In other words, "even under a non-restrictive application of [Rule 9(b)], pleaders must alleged [sic] that the necessary information lies within defendants' control, and their allegations must be accompanied by a statement of facts upon which the allegations are based." *Shapiro*, 963 F.2d at 289 (quoting *Craftmatic*, 890 F.2d at 645). The policy rationale behind "a flexible application of Rule 9(b) is that [defendants are] concealing information making a particularized pleading impossible." *Kyko Global, Inc.*, 2020 U.S. Dist. LEXIS 118043, at *26.

Generally, predicate acts of racketeering based on violations of statutes such as the National Stolen Property Act of 1934, 18 U.S.C. §§ 2314 *et seq.*, do not have to be pled with particularity, except when the complaint alleges that property was stolen by fraud. *Seville*, 742 F.2d at 791. Even in this situation, only the circumstances of the fraud must be plead with particularity. *Id.* at 791. In other words, pleading in particularity only applies "to the facts relating to the fraud, not to the other elements of the violation." *Freedom Med., Inc. v. Gillespie*, 634 F. Supp. 2d 490, 513 (E.D. Pa. Aug. 29, 2007) (citing *Seville*, 742 F.2d at 792 n.7; *Lum v. Bank of Am.*, 361 F.3d 217, 229 (3d Cir. 2004)).

*George Cyril, et al. v. Jose Pereria, et al.*
Report and Recommendation
1:16-cv-00017
Page 15

### B. Maritech Commercial, Inc.'s motion to dismiss should not be mooted although it addresses the First Amended Complaint because defects raised in the First Amended Complaint remain in the Second Amended Complaint

The preliminary question arises whether the District Judge should find Maritech Commercial, Inc.'s motion to dismiss moot because it addresses the superseded First Amended Complaint. (*see* Dkt. No. 45). As a generality, courts deny as moot motions to dismiss based on superseded complaints. *See Garrett*, 938 F.3d at 82. Yet defendants do not have to file another "motion to dismiss simply because an amended complaint was introduced while their motion [to dismiss] was pending....[i]f some of the defects raised in the original motion remain in the new pleading." *Jordan*, 66 F. Supp. 2d at 648 n.1 (quoting Charles A. Wright, Arthur R. Miller, and Mary Kay Kane, Federal Practice and Procedure § 1476 at 558 (2nd ed. 1990)) (internal quotation marks omitted) (considering the motion to dismiss "as being addressed in the amended pleading" because "defects raised in the original motion remain in the new pleading.").

The First Amended Complaint and the Second Amended Complaint remain practically the same (*compare* Dkt. No. 45 *with* Dkt. No. 65) and, as will be explained below, have the same deficiencies with pleading a plausible RICO claim. Thus, the undersigned recommends that the District Judge entertain Maritech Commercial, Inc.'s motion to dismiss as opposed to rendering it moot.[20]

---

[20] As addressed above, portions of Maritech's motion to dismiss may be rendered moot because Cyril and Jonas have not pled a maritime claim since the original complaint. However, the motion to dismiss may still be entertained as it relates to the deficiencies of pleading a plausible RICO claim in the Second Amended Complaint.

*George Cyril, et al. v. Jose Pereria, et al.*
Report and Recommendation
1:16-cv-00017
Page 16

### C. Cyril and Jonas do not plead the existence of an enterprise as required for a RICO claim

Because the RICO is the only claim that the Court has original jurisdiction, it will be addressed first. First Cyril and Jonas do not suggest that a racketeering enterprise existed. *See*, *e.g.*, *Bank of America, NA v. Prosser*, Civ. No. 12-0008, 2015 WL 9463094, at *3 (D.V.I. Dec. 28, 2015). Under RICO, an enterprise is defined as "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). The Supreme Court has declared an enterprise as "an entity separate and apart from the pattern of activity in which it engages," and that its existence can be proven "by evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit." *United States v. Irizarry*, 341 F.3d 273, 285-86 (3d Cir. 2003) (citing *Turkette*, 452 U.S. at 583). Even though Cyril and Jonas bring forth allegations against several individuals and entities, including Jose Pereira, Jr., Jose Carrero, Caribbean Scarp Metal, Caribbean Barge, A.R. Savage & Son, LLC, FirstBank Florida, One Steel Recycling, and Maritech Commercial, Inc., Cyril and Jonas do not explain the connection among these entities as a continuing unit. And Cyril and Jonas do not explain the potential formal or informal connection that these individuals and entities may have with Cyril and Jonas. *See*, *e.g.*, *Bank of America*, 2015 WL 9463094, at *3. Using a heading titled, "THE CORRUPT ENTERPRISE OF THEFT/GRAND LARCENY," will not suffice to plead the existence of an enterprise under the RICO. (*see* Dkt. No. 64 at 4). Thus,

*George Cyril, et al. v. Jose Pereria, et al.*
Report and Recommendation
1:16-cv-00017
Page 17

the undersigned recommends that the District Judge may reasonably infer from Cyril's and

Jonas's complaint that no enterprise exists or existed.

### D. Cyril and Jonas do not plead a pattern of racketeering activity

Cyril and Jonas do not plead a pattern of racketeering activity involving defendants.

At first blush, Cyril and Jonas plead two predicate acts of interstate transportation and

receipt of stolen property under 18 U.S.C. §§ 2314-15 when Carrero and Pereira took the

barge full of scrap metal and sold it to One Steel Recycling in Tampa, Florida. (*see* Dkt. No. 65

at 5-7). Cyril and Jonas also plead that *at least* Defendants Carrero, Pereira, and One Steel

Recycling *knew* about the transport and receipt of stolen scrap metal. (*see id.*); *see also Kyko*

*Global, Inc.*, 2020 U.S. Dist. LEXIS 118043, at *28 (stating that plaintiff pled a violation of NSP

Section 2314 by alleging that "[d]efendants *knew* that the Bonds funds that they transferred

away from PSI were stolen and converted." (emphasis added)).

However, pleading two predicate acts of racketeering is not enough to make out a

plausible claim under the RICO. *See also Kyko Global, Inc.*, 2020 U.S. Dist. LEXIS 118043, at

*31 (stating that "[p]leading two predicate offenses is insufficient in and of itself—a plaintiff

must plead that predicate offenses proximately causes a violation of Section 1962(c).").

Private parties establish a pattern of racketeering activity by showing that defendants

engaged in at least two predicate acts within ten years of each other. *See* 18 U.S.C. § 1961(1),

(5); *Amos v. Franklin Fin. Servs. Corp.*, 509 Fed. Appx. 165, 168 (3d Cir. 2013). Because Cyril

and Jonas only allege a single allegation of racketeering activity against defendants that

*George Cyril, et al. v. Jose Pereria, et al.*
Report and Recommendation
1:16-cv-00017
Page 18

occurred in April 2010,[21] the undersigned recommends that the District Judge cannot reasonably infer that defendants engaged in any pattern of racketeering activity. *See*, *e.g.*, *Bank of America*, 2015 WL 9463094, at *3.

>  **E.  Cyril and Jonas do not plead predicate acts of racketeering sounding in fraud under the flexible interpretation of Rule 9(b) and, even if they did, they do not plead a pattern of racketeering**

Cyril and Jonas do not meet the flexible interpretation of pleading interstate transportation and receipt of stolen property, 18 U.S.C. §§ 2314-15, sounding in fraud under Rule 9(b). Before moving on with analysis, however, the undersigned will reiterate the flexible interpretation of Rule 9(b) declared by the Third Circuit. In *Shapiro* and *Craftmatic*, a flexible interpretation of Rule 9(b) requires that the complaint "delineate at least the nature and scope of plaintiffs' effort to obtain, before filing the complaint, the information needed to plead it with particularity." *Kyko Global, Inc.*, 2020 U.S. Dist. LEXIS 118043, at *26 (citing *Shapiro*, 964 F.2d at 285; *Craftmatic*, 890 F.2d at 645). In other words, "even under a non-restrictive application of [Rule 9(b)], pleaders must allege that the necessary information lies within defendants' control, and their allegations must be accompanied by a statement of facts upon which the allegations are based." *Shapiro*, 963 F.2d at 289 (quoting *Craftmatic*, 890 F.2d at 645).

In totality, the undersigned does not find that Cyril and Jonas have delineated their efforts to plead two predicate acts of racketeering under 18 U.S.C. §§ 2314-15 with

---

[21] This recommendation also supports that Cyril and Jonas do not plead continuity of predicate acts of racketeering. *See H.J. Inc.*, 492 U.S. at 242 (stating that "predicate acts extending over a few weeks or a month... do not satisfy[]" the continuity requirement).

*George Cyril, et al. v. Jose Pereria, et al.*
Report and Recommendation
1:16-cv-00017
Page 19

particularity (*see generally* Dkt. No. 65). Even if they did, as mentioned above, Cyril and Jonas

fail to plead a pattern of racketeering activity. Thus, the undersigned recommends that the

District Court find that Cyril and Jonas have not met the flexible interpretation of Rule 9(b).[22]

### F. Cyril and Jonas should not receive leave to amend the Second Amended Complaint because to do so would give them a third bite at the apple

Now that the undersigned has recommended dismissal of claims under the RICO, the

next question arises whether Cyril and Jonas should receive leave to amend the Second

Amended Complaint to allege a plausible RICO claim. A sister court in the Eastern District of

Pennsylvania granted leave to amend a first amended complaint when, like this case, the

plaintiff did not "specify the subsection of § 1962 upon which it base[d] its RICO claim." *See*

*Federal Ins. Co. v. Ayers*, 741 F. Supp. 1179, 1185 (W.D. Pa. 1990); (Dkt. No. 65 at 2 ¶ 2).

However, another sister court in the Western District of Pennsylvania refused to grant leave

to amend a third time because it had already allowed leave to amend before and found it

"inequitable and futile to allow a third bite at the apple." *Tomana v. Moeller*, 2:16-cv-41, 2016

U.S. Dist. LEXIS 116700, at *32 (W.D. Pa. Aug. 30, 2016) (dismissing the case without

prejudice—after rejecting leave to amend a third time—to allow plaintiffs to pursue their

state law claims in the Pennsylvania state courts). In the same vein, the undersigned finds

that it would be futile to allow Cyril and Jonas a third opportunity to amend its now Second

Amended Compliant to state a claim under the RICO. Accordingly, the undersigned

---

[22] Logically, it would follow that if Cyril and Jonas have not met the flexible interpretation of Rule 9(b), they have also not met the heightened pleading standard of Rule 9(b).

*George Cyril, et al. v. Jose Pereria, et al.*
Report and Recommendation
1:16-cv-00017
Page 20

recommends that the District Judge not allow leave to amend the Second Amended Complaint.

### G. Cyril's and Jonas's local law claims should not be entertained because the undersigned recommends dismissal of the RICO claim

As a final inquiry, the issue arises whether the District Judge should exercise discretion to entertain the six local law claims when the undersigned recommends dismissal of the RICO claim. To reiterate, supplemental jurisdiction over local law claims is discretionary, and the District Court may refuse to exercise discretion when it "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367 (c)(3). The Third Circuit has found that a federal court may not "exercise supplemental jurisdiction over state law claims when the anchor federal claims are subject to dismissal under Rule 12(b)(6)." *Cito*, 892 F.2d at 25.

As the District Judge has declined to exercise supplemental jurisdiction over local law claims after dismissing claims for which it had original jurisdiction, *see Gautier v. Gov't of the V.I.*, Civil No. 2012-076, 2014 U.S. Dist. LEXIS 124942, at *10 (D.V.I. Sept. 8, 2014), *Tyson v. Samuel*, 2014 U.S. Dist. LEXIS 35913, at *8 (D.V.I. Mar. 19, 2014), the undersigned recommends that the District Judge again refuse to entertain supplemental jurisdiction over the six local law claims here after the undersigned has recommended dismissal of Cyril's and Jonas's RICO claim.

*George Cyril, et al. v. Jose Pereria, et al.*
Report and Recommendation
1:16-cv-00017
Page 21

## VI. Conclusion

Based on the foregoing, the undersigned recommends that:

- Defendant Maritech Commercial, Inc.'s Motion to Dismiss Amended Complaint (Dkt. No. 59) be GRANTED;

- that Defendant FirstBank Florida's Motion to Dismiss Second Amended Complaint (Dkt. No. 66) be GRANTED IN PART as to Fed. R. Civ. P. 12 (b)(6), but DENIED IN PART as to Fed. R. Civ. P. 12 (b)(2)[23];

- that One Steel's Motion to Dismiss Second Amended Complaint (Dkt. No. 67) be DENIED AS MOOT because the undersigned recommends dismissal under Fed. R. Civ. P. 12 (b)(6)—grounds not addressed by One Steel;

- that José Carrero's and Caribbean Scrap, LLC's Motion for Summary Judgment (Dkt. No. 69) be DENIED AS MOOT because the undersigned recommends dismissal under Fed. R. Civ. P. 12 (b)(6);

- that the Court dismiss the case in its entirety as to all defendants and all claims because of Cyril's and Jonas's failure to plead a plausible RICO claim; and

- that the Clerk of Court close the case.

Any objections to this Report and Recommendation must be filed within 14 days of receipt of this notice. Failure to file objections within the specified time will bar the aggrieved

---

[23] The undersigned sees no need to recommend granting FirstBank's requested relief of striking the opposition to its motion to dismiss as untimely because he recommends dismissal of the Second Amended Complaint. (*see* Dkt. No. 85 at 1).

*George Cyril, et al. v. Jose Pereria, et al.*
Report and Recommendation
1:16-cv-00017
Page 22

party from attacking the Report and Recommendation before the assigned District Court

Judge. 28 U.S.C. § 636(b)(1); LRCi 72.3.

                                                ENTER:


Dated: June 15, 2021                            /s/ George W. Cannon, Jr.
                                                GEORGE W. CANNON, JR.
                                                U.S. MAGISTRATE JUDGE