## DISTRICT COURT OF THE VIRGIN ISLANDS
## DIVISION OF ST. CROIX

| | | |
|---|---|---|
| **GEORGE T. CYRIL, SR.,** | ) | |
| **EVERETTE S. JONAS,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. 2016-0017** |
| | ) | |
| **JOSE PEREIRA, JR., JOSE CARRERO,** | ) | |
| **CARIBBEAN SCRAP METAL,** | ) | |
| **CARIBBEAN BARGE, A.R. SAVAGE & SON, LLC,** | ) | |
| **FIRSTBANK  FLORIDA, ONESTEEL** | ) | |
| **RECYCLING, INC., and MARITECH** | ) | |
| **COMMERCIAL, INC.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**Attorneys:**
**Ronald E. Russell, Esq.,**
St. Croix, U.S.V.I.
    *For Plaintiffs*

**Stefan B. Herpel, Esq.,**
**Charlotte K. Perrell, Esq.,**
St. Thomas, U.S.V.I.
    *For Defendants Jose Carrero and Caribbean Scrap, LLC*

**Warren B. Cole, Esq.,**
**Elise Catera, Esq.,**
St. Croix, U.S.V.I.
    *For Defendant FirstBank Florida*

**Charles Edward Lockwood, Esq.,**
St. Croix, U.S.V.I.
    *For Defendant OneSteel Recycling, Inc.*

**Matthew J. Duensing, Esq.,**
St. Thomas, U.S.V.I.
    *For Defendant Maritech Commercial, Inc.*

## <u>MEMORANDUM OPINION</u>

**Lewis, District Judge**

THIS MATTER comes before the Court on Plaintiffs George T. Cyril, Sr. and Everette S. Jonas' ("Plaintiffs") "Objection to the Magistrate's 2nd Report and Recommendation" (Dkt. No. 113), which the Court construes as an objection to the following two Reports and Recommendations (R&R) issued by Magistrate Judge George W. Cannon, Jr.: 1) Report and Recommendation on Defendant Maritech Commercial, Inc's ("Maritech") Motion to Dismiss Amended Complaint ("Maritech R&R") (Dkt. No. 106); and 2) Report and Recommendation on Defendant FirstBank Florida's ("FirstBank") Motion to Dismiss Second Amended Complaint ("FirstBank R&R") (Dkt. No. 107).[1] Also before the Court is Judge Cannon's Report and Recommendation on Defendant OneSteel Recycling, Inc.'s ("OneSteel") Motion to Dismiss Second Amended Complaint ("OneSteel R&R") (Dkt. No. 108), and Report and Recommendation on Defendants Jose Carrero ("Carrero") and Caribbean Scrap, LLC's ("Caribbean Scrap") Motion for Summary Judgment ("Carrero R&R") (Dkt. No. 109).

The Maritech R&R (Dkt. No. 106), FirstBank R&R (Dkt. No. 107), and OneSteel R&R (Dkt. No. 108) recommend that the Motions to Dismiss filed by Defendant Maritech and Defendant FirstBank for failure to state a claim, and by Defendant OneSteel for lack of personal jurisdiction be granted. The Carrero R&R (Dkt. No. 109) recommends that the Motion for

---

[1] Although there are a total of four Magistrate Judge R&Rs that were issued on November 10, 2021, the Court concludes that Plaintiff specifically objected to only the Maritech and FirstBank R&Rs because they are the ones that address motions to dismiss for failure to state a claim (Dkt. Nos. 106, 107), which Plaintiffs identify as the subject of their Objection. *See* (Dkt. No. 113 at 1) ("P[laintiffs] . . . hereby file their Objection to the Magistrate's Report and Recommendation dated November 11, 2021, with a recommendation for dismissal [of] [P]laintiffs' complaint for failure to state [a] claim."). The other two R&Rs address a motion to dismiss for lack of personal jurisdiction and improper service, and a motion for summary judgment.

Summary Judgment filed by Defendants Carrero and Caribbean Scrap be denied, but that Plaintiffs' claim of grand larceny against Carrero and Caribbean Scrap be dismissed. For the reasons set forth below, the Court will accept and adopt the findings and recommendations in the Maritech R&R. The Court will also modify, in part, the findings of the FirstBank R&R, OneSteel R&R, and Carrero R&R, as set forth herein, and adopt the recommendations in those three R&Rs. Accordingly, the Motions to Dismiss filed by Defendants Maritech, FirstBank and OneSteel will be granted; the Motion for Summary Judgment filed by Defendants Carrero and Caribbean Scrap will be granted in part and denied in part; and Plaintiffs' claim for grand larceny filed against Carrero and Caribbean Scrap will be dismissed.

## I.     BACKGROUND

The claims in this case involve the sale of scrap metal. Plaintiffs allege that in April 2010 Defendants Carrero and Jose Pereira, Jr. ("Pereira") promised to pay George T. Cyril, Sr. ("Cyril") for a load of scrap metal that was being loaded onto a barge at the Gordon A. Finch Molasses Pier, on St. Croix, Virgin Islands. (Dkt. No. 65 at 5). Plaintiffs further allege that after this agreement was made, Cyril asked Carrero and Pereira to show "proof of payment," and Carrero and Pereira showed Alan Chitolie ("Chitolie")—an individual whom Cyril authorized to use his truck to transport scrap metal—a letter from FirstBank.[2] *Id.* at 4-5. Plaintiffs allege that the letter appeared

---

[2] As the Magistrate Judge notes in the FirstBank R&R, this allegation has been described three different ways. (Dkt. No. 107 at 2 n.5). First, the Second Amended Complaint describes it as stated above. Second, in his affidavit, Cyril states that *he* saw the letter, not his driver, which referenced $805,000 and was addressed to Plaintiff Jonas. *Id.* (citing Dkt. No. 82-1 at 2). Cyril's affidavit further states that "the funds were 'intended for payment of goods sold by [his] company.'" (Dkt. No. 82-1 at 2). Third, in his affidavit, Chitolie does not mention the letter, but states that documents were presented and Carrero said, "We have $800,000 in a bank on St. Croix to pay for the scrap metal so just continue to load." (Dkt. No. 82-3 at 2). Based on the Magistrate Judge's recommendations, adopted by the Court, the Court need not make a factual determination regarding this allegation at this time.

to show that Carrero and Pereira had $800,000 in a corporate account "that would be used to pay for the scrap metal." *Id.* at 5. Chitolie conveyed this information to Cyril. *Id.* Plaintiffs allege that this was a "false letter stating defendants had money deposited in their bank" produced by FirstBank. (Dkt. No. 65 at 3).

Notwithstanding the agreement, Plaintiffs allege that "[i]n an effort to reduce the actual weight of all the scrap metal," Pereira asked Cyril to "bypass the scale." *Id.* at 5. Cyril refused because he had heard of other scrap metal dealers being "short changed by the draft survey of this barge company," and Cyril "did not trust the draft survey." *Id.* Plaintiffs allege that Cyril, Carrero, and Pereira then agreed that Cyril would sell directly to Carrero and Pereira if they: 1) paid based on the average weight of the trucks "that were weighed in the morning"; 2) paid Cyril before the barge left the island; and 3) paid $160 per metric ton. *Id.* at 6.

Plaintiffs assert that before the loading of the scrap metal onto the barge was completed, the "barge took off with [Cyril's] property, without clearing customs, not clearing the agent who represented them, and not paying [Cyril] nor any other persons." *Id.* Cyril claims he followed the barge to Tampa, Florida. *Id.* Cyril also alleges that he called Pereira and asked him for his money, and Pereira told Cyril "to take him to court; he has good lawyers." *Id.* Plaintiffs next claim that in Tampa, Cyril went to OneSteel "where the stolen scrap metal and steel were being unloaded." *Id.* Plaintiffs claim Cyril spoke with Steve Ryan ("Ryan"), the general manager of OneSteel, and Cyril told him that the men from whom OneSteel was purchasing the scrap metal and steel "stole the scrap metal and steel from him and others in the Virgin Islands." *Id.* at 7. Plaintiffs claim that Ryan told Cyril that "he would stop payment to the sellers ([Carrero], [Pereira], and others) to see if they . . . would pay [Cyril]." *Id.* However, Plaintiffs allege that Cyril "did not see or hear from [Carrero], [Pereira], the barge captain and all involved in stealing the scrap metal and steel from him." *Id.*

4

Plaintiffs' Second Amended Complaint ("SAC") contains six Counts, which are alleged against all Defendants. *Id.* at 7-10. Plaintiffs assert claims of: 1) "Grand Larceny";[3] 2) "Conversion"; 3) fraudulent misrepresentation;[4] 4) "Breach of Contract"; 5) "Breach of Good Faith & Fair Dealing"[5]; and 6) "Intentional Infliction of Emotional Distress."[6] In response to Plaintiffs' complaint, Defendants Maritech, FirstBank and OneSteel each filed motions to dismiss. Defendant Maritech, which is described in the SAC as "a marine and scrap surveyor company doing business in Florida and the Caribbean" (Dkt. No. 65 at 3), seeks dismissal under Fed. R. Civ. P. 12(b)(6), arguing that Plaintiffs have failed to state a claim upon which relief can be granted.[7] (Dkt. No. 59 at 1). Defendant FirstBank seeks dismissal under: 1) Fed. R. Civ. P.

---

[3] In Count I, entitled "Grand Larceny", Plaintiffs describe Defendants' acts as constituting "theft/grand larceny." (Dkt. No. 65 at 8). The Court notes that neither the courts of the Virgin Islands nor Virgin Islands law has recognized the tort of civil theft separate from the tort of conversion, which is alleged in Count II. *Cf. Chaput v. Scafidi*, 66 V.I. 160, 185 (V.I. Super. Ct. 2017) (explaining that plaintiff's claim for the value of a gun that was allegedly stolen was a claim for conversion, not debt, and citing New York State case law in support, which states: "The basic essence of conversion is civil theft . . . ." (quoting *Shmueli v. Corcoran Grp.*, 802 N.Y.S.2d 871, 875 n.2 (N.Y. Sup. Ct. 2005))). Accordingly, the Court will consider any claim of civil theft to be encompassed within the claim for conversion in Count II.

[4] The R&Rs construe Count III as a claim of "misrepresentation" based on Plaintiffs' filings. (Dkt. Nos. 106 at 3 n.5, 107 at 3 n.6, 109 at 3 n.6). The SAC also states that it is "a civil action for . . . misrepresentation . . . ." (Dkt. No. 65 at 2). This Court, *infra*, further determines—based on Plaintiffs' argument and the SAC—that Count III is a claim for fraudulent misrepresentation, as opposed to negligent misrepresentation. *See infra* at pp. 13-14.

[5] In the SAC, Breach of Good Faith and Fair Dealing is misnumbered as Count IV instead of Count V.

[6] In the SAC, Intentional Infliction of Emotional Distress is misnumbered as Count V instead of Count VI.

[7] Maritech's Motion to Dismiss is directed to the First Amended Complaint. However, because "the reintroduction of Everette S. Jonas as a Plaintiff is the only change between the First Amended Complaint and the Second Amended Complaint, the Court . . . exercise[d] its discretion to consider Maritech's Motion to Dismiss the First Amended Complaint as directed to the Second Amended Complaint." (Dkt. No. 71 at 4); *see also* (Dkt. No. 94 at 2) (reinstating Maritech's Motion to Dismiss "as an active motion on the docket").

12(b)(2), arguing that this Court lacks personal jurisdiction over FirstBank; and 2) Fed. R. Civ. P. 12(b)(6), arguing that Plaintiffs have failed to state a claim upon which relief can be granted. (Dkt. No. 66 at 1). Defendant OneSteel seeks dismissal under: 1) Fed. R. Civ. P. 12(b)(2), arguing that this Court lacks personal jurisdiction over OneSteel; and 2) Fed. R. Civ. P. 12(b)(5), arguing that Plaintiffs did not properly effectuate service. (Dkt. No. 67 at 1). Finally, Defendants Jose Carrero and Caribbean Scrap, LLC filed a motion for summary judgment. (Dkt. No. 69).

Because the initial R&R issued by Magistrate Judge George W. Cannon, Jr. was not responsive to the issues raised, the Court vacated the initial R&R (Dkt. No. 96) and again referred the motions to dismiss and summary judgment motion to the Magistrate Judge "for a Report and Recommendations that addresses the issues raised in Defendants' Motions" (Dkt. No. 105 at 5). On November 10, 2021, the Magistrate Judge filed four Reports and Recommendations. As to Maritech's Motion to Dismiss (Dkt. No. 59), the Magistrate Judge recommended granting the Motion and dismissing Plaintiffs' claims for failure to state a claim. (Dkt. No. 106 at 10). As to FirstBank's Motion to Dismiss (Dkt. No. 66), the Magistrate Judge recommended granting the Motion and dismissing Plaintiffs' claim of misrepresentation for failure to state a claim. (Dkt. No. 107 at 11). As to OneSteel's Motion to Dismiss (Dkt. No. 67), the Magistrate Judge recommended granting the Motion and dismissing Plaintiffs' claim for lack of personal jurisdiction. (Dkt. No. 108 at 9). Finally, the Magistrate Judge recommended that Defendants Carrero and Caribbean Scrap, LLC's Motion for Summary Judgment (Dkt. No. 69) be denied, but that Plaintiffs' claim of grand larceny be dismissed for failure to state a claim. (Dkt. No. 109 at 15).

Plaintiffs timely filed one objection, which the Court construes as applying to the Maritech

R&R and the FirstBank R&R.[8] Defendants filed no objections to the R&Rs, but Defendant FirstBank filed a timely response to Plaintiffs' Objection (Dkt. No. 114), and Defendant OneSteel filed an untimely response to Plaintiffs' Objection (Dkt. No. 115).[9]

## II.    STANDARD OF REVIEW

### A.  Review of Magistrate Judge's R&Rs

A party may make "specific written objections" to a magistrate judge's report and recommendation "[w]ithin 14 days after being served with a copy of the recommended disposition." Fed. R. Civ. P. 72(b)(2); *see also* 28 U.S.C. § 636(b)(1) ("Within fourteen days after being served with a copy, any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court."); LRCi 72.3 ("Any party who objects to a Magistrate Judge's proposed findings, recommendations or report, shall file objections that

---

[8] The Court has great difficulty understanding the scope or contours of Plaintiffs' Objection. Plaintiffs timely filed a "Motion for Extension of Time to Object to Magistrate's Report and Recommendation" (Dkt. No. 111), which requested an extension of 30 days to respond "to the Report and Recommendation dated November 11 [sic], 2021." *Id.* at 1. However, the four Reports and Recommendations in this matter are all dated November 10, 2021. Because the docket caption for Plaintiffs' Motion for Extension states that it relates to the Report and Recommendation addressing Defendants Carrero and Caribbean Scrap's motion for summary judgment (Dkt. No. 109), the Court's Order of November 24, 2021 (Dkt. No. 112) granted Plaintiffs' Motion only as to the Report and Recommendation addressing Defendants Carrero and Caribbean Scrap's motion for summary judgment (Dkt. No. 109). Nonetheless, Plaintiffs have objected substantively to Judge Cannon's Report and Recommendation "for dismissal [of] plaintiffs' complaint for failure to state [a] claim," and discusses Maritech, specifically, as well as Plaintiffs' allegations against all Defendants. (Dkt. No. 113 at 1, 2-4).   Because the Maritech R&R and FirstBank R&R recommended dismissal of claims against those two Defendants for failure to state a claim, the Court construes the Objection to be to Maritech R&R's and FirstBank R&R's Rule 12(b)(6) analysis and recommendation.

[9] Under Fed. R. Civ. P. 72(b)(2), parties "may respond to another party's objections within 14 days after being served with a copy." Fed. R. Civ. P. 72(b)(2). Plaintiffs filed their objection on December 22, 2021, and responses were due no later than January 5, 2022. OneSteel responded on February 3, 2022. No party has sought to strike OneSteel's late filing. The Court will exercise its discretion and consider it.

specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis of such objection."). When reviewing a report and recommendation, a district judge must review *de novo* "any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3); *see also* 28 U.S.C. § 636(b)(1) ("A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made.").

A district judge reviews any portion of a report and recommendation not objected to under the "plain error" standard of review. *See Tice v. Wilson*, 425 F. Supp. 2d 676, 680 (W.D. Pa. 2006) (holding that the failure to file objections to a portion of a magistrate judge's report and recommendation waived the party's right to *de novo* review and the scope of review was to be "conducted under the far more deferential standard of 'plain error'"), *aff'd*, 276 F. App'x 125 (3d Cir. 2008); *see also EEOC v. City of Long Branch*, 866 F.3d 93, 100 (3d Cir. 2017) ("If a party fails to object timely to the magistrate judge's report and recommendation, we generally review the district court's order for plain error." (footnote and citations omitted)). "Under this standard, the court reviews the magistrate judge's report and recommendation for error that is 'clear or obvious.'" *Bell v. Gov't of United States Virgin Islands*, No. CV 2018-0022, 2020 WL 487214, at *1 (D.V.I. Jan. 30, 2020) (citation omitted); *see also United States v. Olano*, 507 U.S. 725, 734 (1993) (explaining that "plain error" means clear or obvious, and it must be prejudicial, in that "[i]t must have affected the outcome of the district court proceedings").

### B.  Motions to Dismiss under Fed. R. Civ. P. 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) permits a party to move for dismissal based on the failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). As stated in *Connelly v. Lane Construction Corp.*, the Third Circuit follows the analysis set forth by the

Supreme Court in *Bell Atlantic v. Twombly* and *Ashcroft v. Iqbal* when considering a Rule 12(b)(6) motion:

> Under the pleading regime established by *Twombly* and *Iqbal,* a court reviewing the sufficiency of a complaint must take three steps. First, it must "tak[e] note of the elements [the] plaintiff must plead to state a claim." *Iqbal,* 556 U.S. at 675, 129 S.Ct. 1937. Second, it should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 679, 129 S.Ct. 1937. *See also Burtch v. Milberg Factors, Inc.,* 662 F.3d 212, 224 (3d Cir. 2011) ("Mere restatements of the elements of a claim are not entitled to the assumption of truth." (citation and editorial marks omitted)). Finally, "[w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal,* 556 U.S. at 679, 129 S.Ct. 1937.

*Connelly*, 809 F.3d 780, 787 (3d Cir. 2016) (quoting *Bell Atlantic v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)) (footnote omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). Further, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "In deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010) (citation omitted).

### III.    DISCUSSION

In their "Objection to the Magistrate's 2ⁿᵈ Report and Recommendation," Plaintiffs argue that they have pleaded sufficient facts to withstand a motion to dismiss because the complaint "is drafted against defendants collectively," and defendants "worked together as a group to lure [Plaintiff] into selling them steel, and then took their property without paying for it." (Dkt. No.

113 at 2, 4).[10] Further, Plaintiffs argue that "[t]he relevant information and specificity regarding each named defendant is [in] defendants' possession," and Rules 26 to 34 of the Federal Rules of Civil Procedure "are designed to provide for litigants to determine how and when litigation should proceed." *Id.* at 2. Plaintiffs argue that they met their burden in the SAC, as paragraphs 1 through 6 provide the dates of events, and paragraphs 7 through 24 explain the "fraudulent and intentional misrepresentations by defendants regarding the paying, weighing and loading of the steel." *Id.* at 3.

### A.  Motions to Dismiss under Fed. R. Civ. P. 12(b)(6)

Based on Plaintiffs' Objection, the Court will review, *de novo*, the Maritech R&R, as well as the FirstBank R&R's Rule 12(b)(6) analysis and recommendation on Plaintiffs' fraudulent misrepresentation claim.

### 1.  Maritech R&R

The Magistrate Judge's Maritech R&R focuses on the absence of any factual allegations against Maritech in Plaintiffs' SAC. *See* (Dkt. No. 106 at 3) ("Plaintiffs do not describe any actions taken by Defendant Maritech in their recounting of the facts." (citation omitted)). In their opposition to the Maritech Motion to Dismiss, Plaintiffs state that there are five claims against

---

[10] There are no factual allegations in the SAC to support Plaintiffs' conclusory assertion in their Objection that Defendants "worked together as a group." (Dkt. No. 113 at 4). Indeed, this assertion of some sort of conspiratorial conduct is devoid of any factual support. *See, e.g.*, *Berrios v. Hovic*, No. 05-cv-192-F, 2010 U.S. Dist. LEXIS 77525, at *19 (D.V.I. July 29, 2010) ("[A]llegations of a conspiracy must provide some factual basis to support the existence of the elements of a conspiracy: agreement and concerted action." (quoting *Capogrosso v. Supreme Court of N.J.*, 588 F.3d 180, 185 (3d Cir. 2009))); *Great W. Mining & Min. Co. v. Fox Rothschild LLP*, 615 F.3d 159, 179 (3d Cir. 2010) (explaining that the amended complaint lacked "sufficient factual allegations to create 'plausible grounds to infer an agreement'" for conspiracy where it set forth a "conclusory allegation of agreement at some unidentified point" and failed to "allege except in general terms the approximate time when the agreement was made, the specific parties to the agreement[,] . . . the period of the conspiracy, or the object of the conspiracy" (quoting *Twombly*, 550 U.S. at 556)). Accordingly, the Court will focus on the specific allegations asserted against each Defendant.

Maritech, for grand larceny, conversion, breach of contract, breach of good faith and fair dealing, and intentional infliction of emotional distress. (Dkt. No. 63 at 1). The Maritech R&R goes through each claim, and determines that the first claim of grand larceny is mispleaded, as it is a criminal claim which Plaintiffs cannot enforce. (Dkt. No. 106 at 6). As to the other claims, the Magistrate Judge finds that there is simply no factual content in the SAC that addresses the elements of each of those claims. *Id.* at 6-10.

In the SAC, Plaintiffs state that "Defendants" engaged in the wrongdoing identified in the various Counts. (Dkt. No. 65 at 7-10). However, there is no factual content to support those legal conclusions as to Maritech—the alleged "marine and scrap surveyor company" (Dkt. No. 65 at 3). For this reason, the Court agrees with the Magistrate Judge's analysis and conclusion in that regard. (Dkt. No. 106 at 6-10); *see Iqbal*, 556 U.S. at 678 ("To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" (quoting *Twombly*, 550 U.S. at 570)). Specifically, there are no allegations from which one can plausibly conclude: that there was a contract between Maritech and Plaintiffs, which could have been, or was, breached, or from which any breach of good faith and fair dealing could arise; that Maritech took Plaintiffs' scrap metal; that Maritech made any fraudulent misrepresentations; or that there were any actions by Maritech from which there could be, or was, an intentional infliction of emotional distress. The Court further agrees that the grand larceny claim is mispleaded. (Dkt. No. 106 at 6).

In view of the foregoing, the Court will adopt the Maritech R&R (Dkt. No. 106) and grant Maritech's Motion to Dismiss (Dkt. No. 59) for failure to state a claim upon which relief can be granted.

### 2.   FirstBank R&R's Rule 12(b)(6) Analysis and Recommendation

The Magistrate Judge's FirstBank R&R focuses on the specific factual allegations made against FirstBank in the SAC. Under the section "The Parties," the SAC states that FirstBank "is a financial institution located in Florida which produced a false letter stating defendants had money deposited in their bank." (Dkt. No. 65 at 3). Defendants Carrero and Pereira allegedly showed this letter to an associate of Plaintiffs, "appearing to show that they had $800,000.00 in a corporate account that would be used to pay for the scrap metal" (*id.* at 5).[11] The SAC then states that Carrero and Pereira promised to pay Cyril. *Id.* at 5. In their Opposition to the FirstBank Motion to Dismiss,[12] Plaintiffs state that they have "stated a claim for misrepresentation against FirstBank," and list the elements for fraud under Virgin Islands law. *See* (Dkt. No. 80 at 4) (citing *Benjamin v. Bennerson*, No. ST-11-CV-220, 2012 V.I. LEXIS 7, at *5 (V.I. Super. Ct. Feb. 13, 2012)).[13]

The FirstBank R&R follows the steps in *Twombly* and *Iqbal*—stating the elements and case law for fraud in the inducement and case law defining negligent misrepresentation, and then examining the factual allegations in the SAC, as well as the FirstBank letter itself. (Dkt. No. 107 at 8-11); *see Mayer*, 605 F.3d at 230 ("In deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." (citation omitted)). The FirstBank R&R concludes that Plaintiffs have failed to state a claim

---

[11] The Court notes that the letter, itself, states that the balance in the account was $805,000.00. (Dkt. Nos. 107 at 2 n.5, 50-1 at 1).

[12] Plaintiffs erroneously refer to Defendant FirstBank's Motion to Dismiss as a Motion for Summary Judgment, and title their Opposition and conduct their analysis in like manner.

[13] The SAC, itself, does not contain a Count labeled "misrepresentation," although the introductory section of the SAC asserts that Plaintiffs sue for, *inter alia*, "misrepresentation," and Count III, which is not labeled, purports to state such a claim. (Dkt. No. 65 at 2, 8).

because Plaintiffs did not plead "a specific false representation of material fact by Defendant FirstBank." (Dkt. No. 107 at 10). In so concluding, the R&R explains that Plaintiffs have not pleaded that the FirstBank letter stating there was $805,000.00 in a corporate account was false, in that, for example, Defendants Carrero and Pereira did not have that amount of money in their account, or that Carrero and Pereira "failed to pay Plaintiffs because they did not have the funds to do so." *Id.* The FirstBank R&R also explains that a "plain reading of the letter does not show that *FirstBank* made a specific representation that the funds would be used to pay Plaintiffs." *Id.* at 10-11 (emphasis in original) (footnote omitted). Rather, the letter states that "*Defendant Carrero* 'indicates that these funds are intended for payment of goods sold by [Jonas Scrap Metal & Recycling].'"[14] *Id.* at 11 (emphasis in original) (citation omitted).

It is unclear whether the Magistrate Judge found Count III to be a claim for fraud/fraudulent misrepresentation, or negligent misrepresentation. It is important to determine the issue, however, because the two causes of action contain different elements, and unlike fraudulent misrepresentation claims, "[n]egligent misrepresentation claims are not subject to the heightened pleading standards of Rule 9(b)." *Ringo v. Southland Gaming of U.S. Virgin Islands, Inc.*, No. ST-10-CV-116, 2010 WL 7746074, at *4 (V.I. Super. Ct. Sept. 22, 2010).

Based on Plaintiffs' Opposition to the FirstBank Motion to Dismiss and the allegations in Count III of the SAC, the Court concludes that Plaintiffs allege a claim for fraud/fraudulent misrepresentation, and not one for negligent misrepresentation. *See Merchants Com. Bank v. Oceanside Village, Inc.,* 64 V.I. 3, 16 (V.I. Super. Ct. 2015) ("'Fraud' is defined as 'a knowing misrepresentation of the truth or concealment of a material fact to induce another to act to his or

---

[14] The FirstBank letter was addressed to Plaintiff Jonas' scrap metal and recycling company. (Dkt. No. 107 at 10).

her detriment.' In the Virgin Islands, this principle expresses itself as a cause of action for fraudulent misrepresentation." (quoting Black's Law Dictionary 731 (9th ed. 2009) (citation omitted)). Plaintiffs assert in their Opposition that they have stated a claim for misrepresentation and cite the elements for fraud. *See* (Dkt. No. 80 at 4) (citing *Benjamin*, 2012 V.I. LEXIS 7, at *5, which states the elements for fraud). Further, Count III alleges that "defendants *knew* at the time that they made those statements that the statements were not true." (Dkt. No. 65 at 8) (emphasis added). Knowledge of the falsity of a statement is an element of a fraudulent misrepresentation claim, but not a negligent misrepresentation claim. *See Merchants Com. Bank,* 64 V.I. at 21, 28 (defining fraudulent misrepresentation as a misrepresentation that an individual "knew or had reason to know was false" and negligent misrepresentation as providing false information "but only if [the individual] failed to exercise reasonable care or competence in obtaining or communicating the information"). Thus, the Court concludes that Plaintiff's claim is one for fraudulent misrepresentation.

The elements for a claim of fraudulent misrepresentation are: "(1) a misrepresentation; (2) the defendant's knowledge or reason to know the misrepresentation was false; (3) the defendant's making the misrepresentation for the purpose of inducing another to act or refrain from acting; (4) the plaintiff's justifiable reliance upon the misrepresentation; and (5) the pecuniary loss or injury[;] (6) caused by justifiably relying upon the misrepresentation." *Arvidson v. Buchar*, 71 V.I. 277, 358 (V.I. Super. Ct. 2019). Further, a plaintiff must also comply with Rule 9, which requires that a "party must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b); *see also Benjamin*, 2012 V.I. LEXIS 7, at *5 ("[F]raud or intentional misrepresentation [claims] must be pleaded with particularity." (citing *Ringo*, 2010 V.I. LEXIS 62, at *9)). "To satisfy Rule 9(b), a plaintiff 'must plead or allege the date, time and place of the alleged fraud or otherwise inject

14

precision or some measure of substantiation into a fraud allegation.'" *Pricaspian Dev. Corp. v. Martucci*, 759 F. App'x 131, 135 (3d Cir. 2019) (quoting *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007)).

Ultimately, the Court agrees with the Magistrate Judge's recommendation. Even assuming that the Court has personal jurisdiction over Defendant FirstBank,[15] the SAC does not identify any specific misrepresentation of fact by FirstBank. The only allegation naming FirstBank is found under the heading "The Parties," and states that FirstBank "produced a false letter stating defendants had money deposited in their bank." (Dkt. No. 65 at 3). This allegation does not satisfy the specificity requirements of Fed. R. Civ. P. 9(b). *See Allegheny Cnty. Emp. Ret. Sys. v. Energy Transfer LP*, 532 F. Supp. 3d 189, 204 (E.D. Pa. 2021) (explaining that under Rule 9(b) for certain elements of a securities claim "the complaint must specify each allegedly misleading statement, why the statement was misleading, and if an allegation is made on information and belief, all facts supporting that belief with particularity") (quoting *Williams v. Globus Med. Inc.*, 869 F.3d 235, 240 (3d Cir. 2017))). For example, Plaintiffs do not allege that Carrero did not have any money deposited with FirstBank or did not have $805,000.00, in an account. The SAC also does not contain any factual allegation that FirstBank made a representation that the money would be used to pay for the scrap metal, only that Carrero and Pereira promised to pay Plaintiff Cyril. (Dkt. No. 65 at 5). This is consistent with the letter, which does not show that FirstBank made a specific representation that funds would be used to pay Plaintiffs, but recites Defendant Carrero's statement to that effect. *See* (Dkt. No. 50-1 at 1) ("Mr. Carrero indicates that these funds are intended for

---

[15] As discussed below, the Court finds no plain error in the Magistrate Judge's conclusion that jurisdictional discovery is necessary before a ruling can be made on the claim that this Court lacks personal jurisdiction over Defendant FirstBank. Notwithstanding that ruling, however, dismissal of Plaintiffs' claim on the merits is warranted for the reasons stated herein.

payment of goods sold by [Jonas Scrap Metal & Recycling].").

Finally, Plaintiffs allege in Count III that "Defendants told Plaintiffs they had the money to pay for the scrap metal and steel; however, defendants knew at the time that they made those statements the statements were not true." (Dkt. No. 65 at 8). However, this allegation is not sufficient to state a claim as to FirstBank. It does not state, specifically, which defendant or defendants told Plaintiffs that they had the money to pay. *See Ringo*, 2010 V.I. LEXIS 62, at *11-*12 (dismissing a fraud claim because plaintiff did not identify which defendant made the fraudulent promise and when it was made). Moreover, as noted earlier, there is no allegation that there was not $805,000.00 in a corporate account as the FirstBank letter stated.

The Court also notes that in the SAC, Plaintiffs assert claims for grand larceny, conversion, breach of contract, breach of good faith and fair dealing, and intentional infliction of emotional distress against "defendants," but do not provide further specificity. (Dkt. No. 65 at 7-10). Based on the SAC, there are no factual allegations tying FirstBank to the other claims.  Further, because Plaintiffs do not plead any facts providing a basis to support that there was an agreement/conspiracy between FirstBank and the other Defendants, the Court will also dismiss those claims against FirstBank for failure to state a claim. *See Berrios v. Hovic*, No. 05-cv-192-F, 2010 U.S. Dist. LEXIS 77525, at *19 (D.V.I. July 29, 2010) ("[A]llegations of a conspiracy must provide some factual basis to support the existence of the elements of a conspiracy: agreement and concerted action." (quoting *Capogrosso v. Supreme Court of N.J.*, 588 F.3d 180, 185 (3d Cir. 2009))).

In view of the foregoing, the claim of fraudulent misrepresentation, as well as all other claims against FirstBank, will be dismissed for failure to state a claim on which relief can be granted. Accordingly, the Court will modify the FirstBank R&R's (Dkt. No. 107) findings, as set

16

forth above, and adopt its recommendation granting FirstBank's Motion to Dismiss (Dkt. No. 66).

### B. Plain Error Review

Because the Court does not construe Plaintiffs' Objection to apply to: 1) the FirstBank R&R's analysis and decision under Fed. R. Civ. P. 12(b)(2); 2) the OneSteel R&R; and 3) the Carrero R&R, the Court's review of these R&Rs or portions thereof will be for plain error.

### 1. FirstBank R&R's Analysis and Decision under Fed. R. Civ. P. 12(b)(2)

In the FirstBank R&R, the Magistrate Judge correctly identified the applicable legal standard to evaluate FirstBank's Motion to Dismiss under Rule 12(b)(2) for lack of personal jurisdiction. In this regard, Plaintiffs bear the burden of showing that personal jurisdiction exists. *See* (Dkt. No. 107 at 4) (citing *O'Connor v. Sandy Lane Hotel Co., Ltd.*, 496 F.3d 312, 316 (3d Cir. 2007)). There is a two-step process for assessing whether there is personal jurisdiction over a non-resident defendant: 1) determining whether there is a statutory basis under the Virgin Islands long-arm statute, 5 V.I.C. § 4903; and 2) determining whether Defendant had minimum contacts with the Virgin Islands, sufficient to satisfy the due process requirements of the Constitution. *Id.* at 6. However, Plaintiffs need only "establish a prima facie case of personal jurisdiction" if an evidentiary hearing is not held. *See id.* at 5 (quoting *Miller Yacht Sales, Inc. v. Smith,* 384 F.3d 93, 97 (3d Cir. 2004)).

Plaintiffs allege that Defendant FirstBank "is a national bank who does business nationally," but Plaintiffs also argue that further discovery is necessary on the issue of personal jurisdiction. (Dkt. No. 80 at 3). At bottom, the Magistrate Judge found that the parties dispute whether Defendant FirstBank conducts "business or operates branches in the Virgin Islands." (Dkt. No. 107 at 7). The Magistrate Judge based this determination on evidence in the record that FirstBank refers to itself as "FirstBank" in its filings and as "'FirstBank Puerto Rico' in its

17

headings," and the fact that the latter "indisputably carries on business and operates branches in the Virgin Islands by its own account." *Id.* at 8. For these reasons, the Magistrate Judge denied the Motion to dismiss on the ground that a ruling on personal jurisdiction was premature in that jurisdictional discovery is required. *Id.*

It is unclear whether Defendant FirstBank and FirstBank Puerto Rico are the same entity or how they are related. Because the Court finds no plain error in the Magistrate Judge's ruling, the Court adopts the Magistrate Judge's conclusion in the FirstBank R&R that FirstBank's Motion to Dismiss for lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2) should be denied without prejudice to allow for jurisdictional discovery. However, in light of the Court's ruling, *supra*, that FirstBank's Motion to Dismiss for failure to state a claim will be granted, any jurisdictional discovery is rendered moot.

### 2. OneSteel R&R

In the OneSteel R&R, the Magistrate Judge correctly identified the applicable legal standards for motions to dismiss under Fed. R. Civ. P. 12(b)(5), "insufficient service of process," and 12(b)(2), "lack of personal jurisdiction." Regarding the Rule 12(b)(5) argument, the Magistrate Judge determined that service on Ms. Tracy Langston, business manager of Trademark Metals Recycling (TMR), was proper because she was either the authorized agent for OneSteel or "someone such that there is 'a high probability that the papers will reach those persons in the organization responsible for protecting the firm's interest in the litigation.'" (Dkt. No. 108 at 4) (quoting *Idewu v. Sealey*, Civ. A. No. 2011-038, 2012 U.S. Dist. LEXIS 36783, at *5 (D.V.I. Mar. 19, 2012) (internal citations and quotations omitted). The Magistrate Judge based this decision on the fact that: 1) Ms. Langston was the business manager for TMR, which is either OneSteel's successor company or the company that purchased OneSteel's assets; and 2) TMR operates at the

principal address on file for OneSteel according to the Florida Secretary of State. (Dkt. No. 108 at 5).

The Court finds plain error in the Magistrate Judge's conclusion that service was proper, based on the facts in the record before it. There is nothing in the record which establishes that Ms. Langston was an officer or agent of OneSteel, rather than officer or agent of TMR, or otherwise authorized to receive service of process for OneSteel. *See* Fed. R. Civ. P. 4(h)(1)(B) (permitting a corporation to be served by delivering "a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process"). In its Motion to Dismiss, OneSteel states that TMR "is not a parent, subsidiary, or affiliate of OneSteel," but "[r]ather, it purchased OneSteel's assets in March 2014" and Ms. Langston "is not, and has never been, an employee or agent of OneSteel." (Dkt. No. 67 at 5). OneSteel also stated that it did not authorize Ms. Langston, or "any other agent of TMR, to accept service of process on its behalf." *Id.* OneSteel supports these assertions with a Declaration from Ronald Molloy, "a director of OneSteel Recycling, Inc." (Dkt. No. 67-2 at 1).

The OneSteel R&R quotes language from *Idewu v. Sealey* to support the determination that service was proper, which broadly construes the term "managing or general agent" to apply to someone in a position where "there is 'a high probability that the papers will reach those persons in the organization responsible for protecting the firm's interest in the litigation.'" *Idewu*, 2012 U.S. Dist. LEXIS 36783, at *5 (quoting *Brunn v. Xtra Superfood Ctrs., Inc.*, No. 2000/131, 2001 U.S. Dist. LEXIS 2122, at *6 (D.V.I. Jan. 4, 2001)). However, the language quoted from *Idewu* is, itself, quoted from a case in which service was made on an employee of a corporation. *See Brunn*, 2001 U.S. Dist. LEXIS 2122, at *6 (discussing *Carlson v. Metmor Financial, Inc.*, 26 V.I. 79, 80-81 (V.I. Terr. Ct. 1991), and explaining that service was found to be proper on "a receptionist,

secretary, and file clerk with no managerial duties" who was at the corporate office and accepted process in the past). Here, by contrast, OneSteel states that Ms. Langston was not an employee of OneSteel; she was an employee of TMR, which purchased OneSteel's assets.

TMR and its employees do not become agents or employees of OneSteel merely because TMR purchased OneSteel's assets or operates at OneSteel's former place of business. The Court also is not presented with any evidence that TMR is the successor corporation to OneSteel, which—if true—may serve as a basis for concluding that service was proper. *See Meoli v. Message Ctr. USA*, No. Civ.A. 96-CV-7469, 1998 WL 717418, at *2 (E.D. Pa. Sept. 25, 1998) (concluding that service was proper on the general manager of Defendant's "successor corporation"). Thus, the Court finds that Plaintiff has not met its burden of showing that service on Ms. Langston was proper and will grant OneSteel's Motion to Dismiss under Fed. R. Civ. P. 12(b)(5). *See Kuntz v. Aetna, Inc.*, No. CIV.A. 10-877, 2011 WL 611846, at *3 (E.D. Pa. Feb. 18, 2011) ("The burden is on the plaintiff to show that service has been made upon a proper agent of the corporation." (citing *Alloway v. Wain-Roy Corp.*, 52 F.R.D. 203, 204 (E.D. Pa. 1971))). However, because the Court determines, *infra*, that this Court does not have personal jurisdiction over OneSteel, further action to cure any defect in service is unnecessary.

Turning to the Magistrate Judge's analysis of personal jurisdiction in the OneSteel R&R, the Magistrate Judge correctly set forth the appropriate legal principles, as previously described in connection with the FirstBank R&R. *See* Section III.B.1., *supra*. Plaintiffs argue in their Opposition to OneSteel's Motion to Dismiss that the Court may exercise personal jurisdiction under the Virgin Islands long arm statute, because OneSteel transacted business in the Virgin Islands, which can be satisfied with a single act. (Dkt. No. 48 at 3, 5 (citing 5 V.I.C. § 4903(a)(1)). Generally, Plaintiffs argue that OneSteel did business in the Virgin Islands, and specifically, that

OneSteel "was in the process of collecting scrap metal which was obtained on St. Croix." *Id.* at 5. Plaintiff Cyril also alleges that he spoke directly with a OneSteel representative. *Id.* The Magistrate Judge concluded, however, that personal jurisdiction over OneSteel does not exist because "Plaintiffs have made no allegations showing that [OneSteel] engaged in any act to purposefully avail itself of doing business in the Virgin Islands." (Dkt. No. 108 at 8). The Court concurs and finds no plain error in this ruling.

Plaintiffs allege in the SAC that OneSteel purchased the scrap metal from Defendants Carrero, Pereira, and others. (Dkt. No. 65 at 7). This is consistent with Plaintiffs' allegations that OneSteel "was in the process of collecting scrap metal which was obtained on St. Croix." (Dkt. No. 48 at 5). However, OneSteel allegedly purchased the scrap metal from Carrero and Pereira, who Plaintiffs allege are not Virgin Islands residents. (Dkt. No. 65 at 2). As the OneSteel R&R explains, there is no allegation that OneSteel's purchase was made in the Virgin Islands, or that OneSteel even knew the scrap metal came from the Virgin Islands until Plaintiff Cyril so advised a OneSteel representative. (Dkt. No. 108 at 8). Further, Plaintiff Cyril alleges that he initiated the communications with OneSteel and did so while in Tampa—activities which are insufficient to support personal jurisdiction in the Virgin Islands. (Dkt. No. 65 at 7); *see O'Connor*, 496 F.3d at 317 ("Thus, the 'unilateral activity of those who claim some relationship with a nonresident defendant' is insufficient. And contacts with a state's citizens that take place outside the state are not purposeful contacts with the state itself." (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)) (internal and external citations omitted)).

The Third Circuit explains that "in deciding a motion to dismiss for lack of jurisdiction, a court is required to accept the plaintiff's allegations as true and is to construe disputed facts in favor of the plaintiff." *Metcalfe v. Renaissance Marine, Inc.*, 566 F.3d 324, 330 (3d Cir. 2009)

(quoting *Toys "R" US, Inc. v. Step Two, S.A.*, 318 F.3d 446, 457 (3d Cir. 2003)). Here, however, Plaintiffs have not made any specific allegation from which one can conclude that OneSteel "purposefully directed [its] activities" at the U.S. Virgin Islands. *See O'Connor*, 496 F.3d at 317 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)). Nor have Plaintiffs alleged even one purposeful contact by OneSteel with the Virgin Islands. *See Metcalfe*, 566 F.3d at 324 ("Specific jurisdiction exists if the defendant has '"purposefully directed" his activities at residents of the forum and the litigation results from alleged injuries that "arise out of or relate to" those activities.'" (*quoting Burger King*, 471 U.S. at 472)). Thus, Plaintiffs have not satisfied either the Virgin Islands Long Arm statute or the minimum contacts required by the Due Process Clause of the Constitution. Accordingly, the Court accepts the Magistrate Judge's findings, as modified herein, and accepts his recommendation to dismiss the claims against OneSteel based on lack of personal jurisdiction (Dkt. No. 108). In view of the foregoing, OneSteel's Motion to Dismiss (Dkt. No. 67) will be granted.

### 3. Carrero R&R

In the Carrero R&R, the Magistrate Judge correctly identified the applicable legal standards for motions for summary judgment under Fed. R. Civ. P. 56(a) and applied them to Defendants Carrero and Caribbean Scrap's arguments. First, the Magistrate Judge determined that there were genuine disputes of material facts regarding Plaintiffs' contract claims—Counts IV "Breach of Contract," and Count V "Breach of Good Faith & Fair Dealing." (Dkt. No. 109 at 6-8). Defendants Carrero and Caribbean Scrap argued that there was a contract between Plaintiff Jonas and Seacape Shipping & Trading, LLC ("Seacape"), of which Pereira is the sole member. (Dkt. No. 69 at 1). According to Carrero and Caribbean Scrap, Seacape contracted to purchase scrap metal from Jonas, and that contract "governs this transaction." *Id.* at 4. Thus, they allege that Seacape is the

only entity which could be liable for a breach of contract. *Id.* at 5. However, the Magistrate Judge found that Plaintiffs alleged in the SAC that there was a separate oral contract, under which Defendants Carrero and Pereira promised to pay Cyril for scrap metal, and that giving Plaintiffs the "benefit of all favorable inferences," both the written contract and the oral contract could exist. (Dkt. No. 109 at 7-8). As such the Magistrate Judge, concluded that there is "a genuine dispute of material fact regarding whether an oral contract existed—and was breached—between Plaintiff Cyril and Defendants Carrero and Pereira." *Id.* at 8. After reviewing the pleadings and the record, the Court concurs that an oral contract has been pleaded and there are genuine disputes of material facts as to whether such a contract existed and was breached. Accordingly, the Court finds no plain error in the Magistrate Judge's ruling in this regard.

The Carrero R&R then examines the argument that Count I, "Grand Larceny", was mispleaded, given that grand larceny is a crime, not a civil tort. *Id.*; *see* 14 V.I.C. § 1083 ("Grand Larceny"); *see also* 14 V.I.C. § 1081 (defining larceny and its two degrees). The Court concurs and finds no plain error in the Magistrate Judge's conclusion that Count I, "Grand Larceny", must be dismissed because it is a crime and is not a cause of action in a civil case.

After determining that Count I must be dismissed, the Magistrate Judge analyzes Defendants' arguments as to Counts II, "Conversion," and VI "Intentional Infliction of Emotional Distress" ("IIED"). In essence, Defendants argue that the tort claims must be dismissed because they are based on a duty arising out of a contract, and the economic loss doctrine "prohibits plaintiffs from recovering in tort economic losses to which their entitlement flows only from a contract." *See* (Dkt. No. 69 at 6) (quoting *Abney v. Univ. of the Virgin Islands*, No. 08-116, 2016 WL 2349108, at *8 (D.V.I. May 3, 2016)). The Magistrate Judge determined that the appropriate standard to apply is the "gist of the action test," which "is used to determine whether tort claims

that accompany contract claims should be allowed as freestanding causes of action or rejected as illegitimate attempts to procure additional damages for a breach of contract." (Dkt. No. 109 at 9) (quoting *Davis v. Ragster*, 49 V.I. 932, 944 (D.V.I. 2008)).

The Magistrate Judge determined that at this time—with the existence and terms of any contract between Cyril and Defendants Carrero and Caribbean Scrap in dispute—"it is premature to bar any of Plaintiffs' tort claims based on the gist of the action doctrine." (Dkt. No. 109 at 11). The Court concurs. As the Magistrate Judge explains, "[a]t the pleading stage, Plaintiffs are permitted to plead alternative or inconsistent claims under Federal Rule of Civil Procedure 8(d)(2)." *Id.* at 10-11 (citing *Weiss v. Maccaferri, Inc.*, No. 14-46, 2016 U.S. Dist. LEXIS 50436, at *13 (D.V.I. Apr. 11, 2016)); *see* also Fed. R. Civ. P. 8(d)(3) ("Inconsistent Claims or Defenses"). Plaintiffs' tort claims may ultimately be barred if Plaintiffs' claims are properly based on a contract. However, at this stage of the case, the Court cannot find that Plaintiffs are precluded from asserting their tort claims because of an alleged oral contract that may or may not exist. The Court finds no plain error in the Magistrate Judge's ruling to this effect.

Finally, the Magistrate Judge addresses Defendants Carrero and Caribbean Scrap's arguments regarding Count III, which they construed as a promissory estoppel claim in their Summary Judgment Motion and argue is barred by the contract between Seacape and Jonas. (Dkt. No. 69 at 7-8). As previously discussed the Court has found Count III to be a fraudulent misrepresentation claim. *See* Section III.A.2., *supra*. The elements for fraudulent misrepresentation were previously articulated in connection with the claim against FirstBank. *Id.* (quoting *Arvidson*, 71 V.I. at 358).

Taking Plaintiffs' material allegations as true, the Magistrate Judge found that Defendants Carrero and Pereira's alleged oral promise to Cyril to pay for the scrap metal, as well as the

statement in the FirstBank letter that Defendant Carrero "indicates that these funds are intended for payment of goods sold by [Plaintiff Jonas' company]" (Dkt. No. 77-7), are sufficient to state a claim for misrepresentation. (Dkt. No. 109 at 12, 14). Further, Plaintiffs allege that Defendants Carrero and Pereira provided the letter knowing that they would not use the funds for payment, and the letter justifiably induced Cyril to continue loading the scrap metal. *Id.* at 13. Cyril also claims that he was not paid for the scrap metal that was loaded on the barge based on Defendants Carrero and Pereira's misrepresentations. *Id.* The Court agrees that Plaintiffs have alleged a fraudulent misrepresentation claim against Defendants Carrero and Caribbean Scrap and therefore finds no plain error in the Magistrate Judge's conclusion.

In view of the foregoing, the Court concludes that Carrero and Caribbean Scrap's Motion for Summary Judgment will be granted as to Count I, and denied as to the remaining Counts.

### C.  Dismissal with Prejudice is Appropriate

The Court must determine whether to grant Plaintiffs leave to amend the SAC, under Fed. R. Civ. P. 15(a), based on its determination that it will grant Defendant Maritech's, Defendant FirstBank's, and Defendant OneSteel's Motions to Dismiss the SAC, and its determination that Count I—"Grand Larceny"—will be dismissed against Defendants Carrero and Caribbean Scrap. Plaintiffs have not sought leave to amend, but the Third Circuit has held "that even when a plaintiff does not seek leave to amend, if a complaint is vulnerable to 12(b)(6) dismissal, a District Court must permit a curative amendment, unless an amendment would be inequitable or futile." *Alston v. Parker*, 363 F.3d 229, 235 (3d Cir. 2004) (citation omitted), *abrogated on other grounds by Iqbal*, 556 U.S. at 678; *see id.* at 236 ("Dismissal without leave to amend is justified only on the grounds of bad faith, undue delay, prejudice, or futility." (citation omitted)). "In assessing 'futility,' the District Court applies the same standard of legal sufficiency as applies under Rule

12(b)(6)." *Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000) (citations omitted). Further, "the grant or denial of an opportunity to amend is within the discretion of the District Court." *Id.* (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

Under Fed. R. Civ. P. 15(a)(2), courts "should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). However, the Third Circuit has said that "[d]enial of leave to amend a complaint is especially appropriate where a party has already been given the opportunity to amend the complaint." *In re Avandia Mktg., Sales Practices & Prods. Liab. Litig.*, 564 F. App'x 672, 673 (3d Cir. 2014) (citation omitted); *see also Lake v. Arnold*, 232 F.3d 360, 374 (3d Cir. 2000) ("[W]e are inclined to give the District Court even broader discretion when, as here, the court has already granted the requesting party an opportunity to amend its complaint." (citation omitted)). Here, the First Amended Complaint was filed over ten months after the initial Complaint, and the SAC was filed over one year after the initial Complaint, which militate in favor of dismissing the SAC with prejudice. *See Gasoline Sales v. Aero Oil Co.*, 39 F.3d 70, 74 (3d Cir. 1994) (affirming the district court's decision to deny leave to file a fourth pleading, *inter alia*, because "three attempts at a proper pleading is enough" and a "plaintiff has to carefully consider the allegations to be placed in a complaint before it is filed" (citation and quotation marks omitted)); *see also Cureton v. NCAA*, 252 F.3d 267, 273 (3d Cir. 2001) ("Delay may become undue when a movant has had previous opportunities to amend a complaint." (citation omitted)).

Further, Plaintiffs were on notice of the potential deficiencies in their pleadings, as Defendants Maritech, FirstBank, and OneSteel had filed motions to dismiss the Complaint and motions to dismiss the First Amended Complaint prior to Plaintiffs' filing of the SAC. (Dkt. Nos. 20, 25, 38, 56, 57, 59); *see United States ex rel. Schumann v. AstraZeneca Pharms. L.P.*, 769 F.3d 837, 849 (3d Cir. 2014) (affirming the district court's decision to dismiss a corrected fourth

amended complaint with prejudice because further amendment would be futile when the *qui tam* relator "was on notice of the deficiencies" in the complaint after a defendant moved to dismiss the complaint with prejudice); *Krantz v. Prudential Invs. Fund Mgmt. LLC*, 305 F.3d 140, 144 (3d Cir. 2002) ("A District Court has discretion to deny a plaintiff leave to amend where the plaintiff was put on notice as to the deficiencies in his complaint, but chose not to resolve them." (citation omitted)).

Based on the foregoing, the Court finds that further leave to amend would be inequitable and futile as to the claims against Maritech and FirstBank. It would similarly be inequitable and futile as to OneSteel for the aforementioned reasons, and because the Court lacks personal jurisdiction over OneSteel. Finally, the Court finds that permitting amendment would be futile as to Count I, "Grand Larceny," against Defendants Carrero and Caribbean Scrap, because Count I is a crime that cannot be pleaded in a civil action. Thus, the Court will dismiss with prejudice the SAC as to Defendants Maritech, FirstBank, and OneSteel, and will dismiss Count I with prejudice as to Defendants Carrero and Caribbean Scrap.

## IV.    CONCLUSION

For the reasons discussed above, the Court will accept and adopt the findings and recommendations in the Maritech R&R. Accordingly, Maritech's Motion to Dismiss will be granted for failure to state a claim upon which relief can be granted. The Court will also modify, in part, the findings of the FirstBank R&R, OneSteel R&R, and Carrero R&R and adopt the recommendations in those three R&Rs to the extent set forth herein. Accordingly, FirstBank's Motion to Dismiss for lack of personal jurisdiction will be denied and for failure to state a claim will be granted; OneSteel's Motion to Dismiss for improper service will be granted and for lack of personal jurisdiction will be granted; and Carrero and Caribbean Scrap's Motion for Summary

Judgment will be denied, except as to Count I, "Grand Larceny." The Court will dismiss the SAC with prejudice as to Defendants Maritech, FirstBank, and OneSteel. The Court will also dismiss with prejudice Count I, "Grand Larceny," as to Defendants Carrero and Caribbean Scrap.

An appropriate Order accompanies this Memorandum Opinion.


Date: July 14, 2022                              _____/s/_____
                                                 WILMA A. LEWIS
                                                 District Judge