## IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
## DIVISION OF ST. CROIX

GEORGE T. CYRIL, SR.,          )
                                               )
                   Plaintiff,        )
                                             )     **Case No. 1:16-cv-0017**
                           v.              )
                                             )
JOSE CARRERO and CARIBBEAN   )
SCRAP METAL,             )
                                             )
                 Defendants.    )
                                             )

ATTORNEYS:

RONALD E. RUSSELL, ESQ.
ST. THOMAS, USVI
      *FOR PLAINTIFF GEORGE T. CYRIL, SR.*

JUSTIN L. WEISBERG, ESQ.
BUCHALTER, A PROFESSIONAL CORPORATION
CHICAGO, IL

STEFAN B. HERPEL, ESQ.
ALISHA UDHWANI, ESQ.
DUDLEY NEWMAN FEUERZEIG LLP
ST. CROIX, USVI

CHARLOTTE K. PERRELL, ESQ.

DUDLEY NEWMAN FEUERZEIG LLP
ST. THOMAS, USVI
      *FOR DEFENDANTS JOSE CARRERO AND CARIBBEAN SCRAP METAL*

## MEMORANDUM OPINION[1]

**ROBERT A. MOLLOY, Chief Judge**

**THIS MATTER** comes before the Court on Defendants Jose Carrero and Caribbean Scrap Metal's ("Defendants") Motion for Summary Judgment, filed on January 18, 2025. (ECF No. 196.) Plaintiff George T. Cyril, Sr. ("Plaintiff") filed an Opposition on February 24, 2025. (ECF No. 204.) Defendants seek summary judgment on all of Plaintiff's remaining claims against them, as set forth in Plaintiff's Second Amended Complaint ("SAC") (ECF No. 65), pursuant to Rule 56 of the Federal Rules of Civil Procedure and Rule 56.1 of the Local Rules of Civil Procedure. (ECF No. 196 at 1.) For the reasons that follow, the Court will grant Defendants' Motion for Summary Judgment, grant summary judgment in favor of Defendants on all five remaining claims in Plaintiff's Second Amended Complaint, and grant Defendants leave to file a motion for attorney's fees and costs in accordance with the appropriate federal rules of civil procedure.

## I.     BACKGROUND

The facts and procedural history of this case were previously detailed at length in Judge Lewis's July 14, 2022 Memorandum Opinion. *See Cyril v. Pereira*, Civil No. 2016-0017, 2022 U.S. Dist. LEXIS 125067, at *1-8 (D.V.I. July 14, 2022), ECF No. 118. Plaintiff's SAC, filed on April 29, 2017, alleged six causes of action: (1) grand larceny; (2) conversion; (3) fraudulent misrepresentation; (4) breach of contract; (5) breach of good faith and fair dealing; and (6) intentional infliction of emotional distress. (ECF No. 65 at 7-10.) On July 14, 2022, Judge Lewis dismissed the grand larceny cause of action, as a criminal charge cannot

---

[1] Due to the retirement of the judge previously assigned to this case, the undersigned, exercising his authority as Chief Judge of the District Court, reassigned this case to himself on February 17, 2026.

*Cyril v. Carrero*
Case No. 1:16-cv-0017
Memorandum Opinion
Page 3 of 22

be brought by a civil plaintiff, and ordered that the remaining five causes of actions may proceed against Defendants.[2] *Id.* at 10-11, ECF No. 117 at 23-25. The claims in this case revolve around tons of scrap metal loaded onto a barge.

Defendants entered into a written contract with former Co-Plaintiff Everette Jonas[3] ("Jonas")—to which Plaintiff was not a signatory or a party—for several tons of scrap metal to be delivered to and loaded on a barge at the Gordon A. Finch Molasses Pier (the "Pier") in St. Croix on March 18, 2010. (ECF No. 200-1; *see also* ECF No. 199-4 at 1-6.) Scrap metal was delivered to and loaded onto the barge pursuant to that contract. (ECF No. 200-1 at 2; *see also* ECF Nos. 200 at 2; 200-4 at 10.) Jonas separately sub-contracted with Plaintiff so that Jonas could fulfill his obligations under Jonas' contract with Defendants. (ECF No. 200-1 at 2; *see also* ECF Nos. 200 at 2; 200-4 at 10.) Following deliveries of scrap metal, the barge was "closed" to further loading of scrap metal, and the barge was surveyed. (ECF No. 200-1 at 2.) After the survey, the barge sailed. *Id.*

The fundamental points of contention in this litigation arise out of an alleged oral contract between Plaintiff and Defendants, the timing of the departure of the barge, and whether the scrap metal loaded onto the barge by Plaintiff was done so pursuant to Plaintiff's subcontract with Jonas, or the alleged oral contract between Plaintiff and Defendants. Plaintiff claims he made an oral contract with Defendant Carrero for additional scrap metal

---

[2] On the same day, Judge Lewis dismissed all claims against then-defendants Maritech Commercial, Inc., FirstBank Florida, and OneSteel Recycling. (ECF No. 117 at 2.) Plaintiff never effected proper service on Jose Pereira, a named defendant in this matter. Plaintiff moved to serve Mr. Pereira out of time on July 12, 2024 (ECF No. 178), which Magistrate Judge Emile A. Henderson III denied. (ECF No. 181.) Accordingly, Defendants Jose Carrero and Caribbean Scrap Metal are the only two remaining defendants in this litigation.

[3] Former Plaintiff Jonas' claims were dismissed without prejudice on June 18, 2024, following the filing of "Suggestion of Death of Plaintiff Everette S. Jonas" (ECF No. 147) on January 12, 2024. (ECF No. 164.)

to load on the barge. (ECF No. 204 at 4.) Defendants, however, claim that they never entered into an oral contract with Plaintiff. (ECF No. 200-1 at 4.) Similarly, Plaintiff alleges that the barge did not leave St. Croix until April 11 or 12, 2010.[4] (ECF No. 204 at 3.) However, according to Defendants, the barge sailed on April 8, 2010, around 5:00 p.m. carrying only the scrap metal loaded onto the barge pursuant to the contract with Jonas.[5] (ECF No. 200-1 at 2-3.) However, Plaintiff alleges that he supplied "between 700-800 tons of material" to the barge pursuant to his claimed oral contract from April 9, 2010, until the barge's departure from the Pier. (ECF No. 204 at 4.)

Delivery slips for scrap metal loaded onto the barge were provided to document the amount of scrap metal loaded. (ECF No. 200-1 at 4.) It is undisputed that delivery slips dated April 6, 7, and 8, 2010 "were for deliveries of scrap metal by [Plaintiff] under his contract with Jonas." (ECF No. 200-1 at 4.) Plaintiff claims that delivery slips dated April 9, 10, and 11 evidence his deliveries of scrap metal pursuant to the alleged oral contract. *Id.*; see also ECF No. 204 at 4-5. However, no such delivery slips were submitted as evidence in this litigation. Defendants maintain that Plaintiff "has been unable to establish any additional steel" was loaded onto the barge "after April 8, 2010." (ECF No. 200-1 at 4.)

---

[4] However, Plaintiff cites to Plaintiff's affidavit—dated July 6, 2018, and refiled in connection with the instant Opposition—which states that on the evening of April 10, 2010, "the defendants closed the barge and left without paying me." (ECF No. 204-3 at 1-2.) Plaintiff also testified in his deposition that he was delivering scrap metal to the barge through April 11, 2010. (ECF No. 200-4 at 6, 8.)

[5] Plaintiff disputes this fact by claiming that "[t]he barge did not sail on April 8, 2010 as evidenced by the demurrage costs." (ECF No. 204-1.)

*Cyril v. Carrero*
Case No. 1:16-cv-0017
Memorandum Opinion
Page 5 of 22

Plaintiff alleges the value of the scrap metal delivered under the oral contract is approximately $138,000.00[6] and that Defendants never paid him for the scrap metal delivered pursuant to their alleged oral contract. (ECF No. 65 at 7-8.) Plaintiff filed a Complaint against Defendants on April 8, 2016. (ECF No. 1.) The current operative Complaint is the SAC, filed on April 29, 2017. (ECF No. 65.) As mentioned above, the SAC alleges six causes of action against Defendants: 1) grand larceny; 2) conversion; 3) fraudulent misrepresentation; 4) breach of contract; 5) breach of good faith and fair dealing; and 6) intentional infliction of emotional distress. *Id.* at 2.

In a Memorandum Opinion and Order dated July 14, 2022, Judge Lewis dismissed Count One, "Grand Larceny," against Defendants "because it is a crime and is not a cause of action in a civil case." *Id.* at 10, ECF No. 118 at 23.[7] However, the Court did not dismiss the remaining five counts because (1) "there were genuine disputes of material facts regarding Plaintiffs' contract claims"; (2) "it [wa]s premature" to grant summary judgment on tort claims "with the existence and terms of any contract between [Plaintiff] Cyril and Defendants Carrero and Caribbean Scrap [Metal] in dispute"; and (3) "[t]aking Plaintiffs' material allegations as true," the alleged oral promise and statements "are sufficient to state a claim for misrepresentation." *Id.* at *10-11. Defendants now move for summary judgment on all remaining claims.

---

[6] The Court notes that Plaintiff alleged in his original complaint a value of $128,000.00. (ECF No. 1-2 at 4). Plaintiff also stated in his deposition that the value of the scrap metal that he provided to Defendants under the alleged oral contract was $130,000.00. (ECF No. 200-3 at 19).

## II.    LEGAL STANDARD

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Goldenstein v. Repossessors Inc.*, 815 F.3d 142, 146 (3d Cir. 2016) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). A factual dispute is material when "its resolution must have the potential to affect the outcome of the suit." *SodexoMAGIC, LLC v. Drexel Univ.*, 24 F.4th 183, 203 (3d Cir. 2022). A factual dispute is genuine when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 203-04 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)). In a motion for summary judgment, the court must view all facts "in the light most favorable to the non-moving party, and draw all reasonable inferences in that party's favor[.]" *Curto v. A Country Place Condominium Ass'n., Inc.*, 921 F.3d 405, 409 (3d Cir. 2019) (internal quotations omitted). However, "'the mere existence of a scintilla of evidence' favoring the non-moving party will not prevent summary judgment." *SodexoMAGIC, LLC*, 24 F.4th at 203-04.

The moving party bears the initial burden of "demonstrat[ing] the absence of a genuine dispute of material fact." *Goldenstein*, 815 F.3d at 146 (citation omitted). The moving party may meet their burden by "pointing to an absence of evidence supporting an essential element as to which the non-moving party will bear the burden of proof at trial." *Honore v. V.I. Hous. Fin. Auth.*, Civil No. 1:16-cv-0055, 2024 U.S. Dist. LEXIS 165220, at *11-12 (D.V.I. Sept. 13, 2024). However, "a conclusory assertion that the nonmoving party has no evidence is insufficient." *Id.* at *12 Thus, a party who moves for summary judgment on the grounds

that the nonmoving party has no evidence "must affirmatively show the absence of evidence in the record." *Id.*

If the moving party meets their burden, the burden shifts to the nonmoving party to "go beyond the pleadings and by its own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there *is* a genuine issue for trial." *Daubert v. NRA Grp., LLC*, 861 F.3d 382, 391 (3d Cir. 2017) (citing *Celotex*, 477 U.S. at 324). The non-moving party must "do more than 'simply show that there is some metaphysical doubt as to the material facts.'" *Id.* (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). Further, the non-moving party cannot "rely merely upon bare assertions, conclusory allegations, or suspicions" to avoid summary judgment. *See Fireman's Ins. Co. v. DuFresne*, 676 F.2d 965, 969 (3d Cir. 1982). Essentially, it is "put up or shut up time" for the nonmoving party, *Daubert*, 861 F.3d at 391 (quoting *Berckeley Inv. Grp. v. Colkitt*, 455 F.3d 195, 201 (3d Cir. 2006)), because the non-moving party must identify "specific facts and *affirmative evidence* that contradict those offered by the moving party," *Corry v. N.J. Judiciary*, Civil No. 20-15999, 2023 U.S. Dist. LEXIS 95940, at *6 (D.N.J. May 31, 2023) (citation omitted) (emphasis added). Finally, "in considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the nonmoving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" *Knieling v. Fook*, Civil No. 2022-36, 2024 U.S. Dist. LEXIS 96083, at *8 (D.V.I. May 30, 2024) (citation modified).

Additionally, the Local Rules of the District Court of the Virgin Islands establish the procedure in this district for setting out facts in support of a motion for summary judgment:

*Cyril v. Carrero*
Case No. 1:16-cv-0017
Memorandum Opinion
Page 8 of 22

(a) Documents Filed by Movant. In addition to the documents authorized by LRCi 7.1, a party moving for summary judgment shall file a separate statement of the material facts about which the movant contends there is no genuine issue. []

(b) Documents Filed by Respondent. Any party adverse to a motion filed under this rule may file, in addition to the documents authorized by LRCi 7.1, a response to the movant's statement of material facts about which the movant contends there is no genuine issue. The respondent must address the facts upon which the movant has relied pursuant to subsection (a), [] and either: (i) agree that the fact is undisputed; (ii) agree that the fact is undisputed for the purpose of ruling on the motion for summary judgment only; or (iii) state that the fact is disputed. If the fact is disputed the respondent shall affix to the response copies of, and cite to, the precise portions of the record relied upon as evidence of each disputed material fact. In addition, the respondent may file a concise statement of any additional facts, serially numbered, that the respondent contends are material to the motion for summary judgment and as to which the respondent contends there exists a genuine issue to be tried.

....

(d) Effect of Failure to Respond. Failure to respond to a movant's statement of material facts, or a respondent's statement of additional facts, as provided by these Rules may result in a finding that the asserted facts are not disputed for the purposes of summary judgment.

LRCi 56.1.

## III.    DISCUSSION

### A.  Enforceability of the Alleged Oral Contract

Defendants claims that there is no genuine issue of material fact to support a claim of an oral contract under Virgin Island law. (ECF No. 200 at 6.) First, Defendants argue that Plaintiff cannot identify with whom he made an oral contract. *Id.* at 6-7. Second, Defendants argue that there are no facts supporting any partial performance under the alleged oral contract. *Id.* at 7. Finally, Defendants claim that even if an oral contract existed, it would be unenforceable under the Statute of Frauds because the amount in dispute exceeds $500.[8] *Id.*

---

[8] The Virgin Islands adopted the UCC, including the Statute of Frauds, to govern the sales of goods. *MRL Dev. I, LLC v. Whitecap Inv. Corp.*, Civil No. 2013-48, 2014 U.S. Dist. LEXIS 163055, at *11 (D.V.I. Nov. 18, 2014), *aff'd on other grounds*, 823 F.3d 195 (3d Cir. 2016). The UCC "applies to transactions in goods" and "a contract for

*Cyril v. Carrero*
Case No. 1:16-cv-0017
Memorandum Opinion
Page 9 of 22

at 7. Defendants thus argue that they are entitled to summary judgment on the contract claims. *Id.* at 6, 12.

Plaintiff currently "maintains" in his Opposition that he entered into an oral contract with Defendants and third-party Jose Pereira ("Pereira") on April 9, 2010. (ECF No. 204 at 4.) The Court notes that this date is unsupported by the record cited by Plaintiff himself,[9] and inconsistent with Plaintiff's prior allegations in this litigation, including in his affidavit,[10] other affidavits submitted by Plaintiff,[11] and the operative pleadings in this case.[12] This inexplicable and unresolved factual inconsistency aside, Plaintiff argues that the oral contract is enforceable—notwithstanding the Statute of Frauds requiring a written contract if the value of the contract exceeds $500—because Plaintiff partially performed the oral contract "by delivering the steel," and thus "[P]laintiff's partial performance, takes this agreement out of the Statute of Frauds," (ECF No. 204 at 5-6.) Plaintiff states that "[t]he receipts provided by plaintiff Cyril constitute evidence that Cyril completed his part of the agreement by delivering the steel." *Id.* at 4-5.

---

the sale or purchase of a tangible object is a contract for the sale of goods, and [thus] falls within the purview of the UCC." *Id.* at *10-11 (applying the UCC to the sale of lumber).

[9] Plaintiff's Opposition cites to his deposition testimony as evidence of this fact. *Id.* However, Plaintiff's deposition testimony repeatedly describes the oral contract and conversation as occurring on April 10, 2010. (ECF No. 200-3 at 10 at 36:10-20, 10 at 37:23-24, 11 at 38:1-5, 12 at 44:12-17, 12 at 45:2-15, 13 at 46:12-14, 16 at 59:6-9, 17 at 62:10-20.)

[10] Plaintiff's affidavit states the oral contract was made on April 10, 2010. (ECF No. 204-3 at 2-3.)

[11] The Affidavit of Alan Chitolie, which Plaintiff submitted in support of his Opposition, appears to allege that all the events, including the alleged oral contract, occurred on April 6, 2010. (ECF No. 240-2 at 2-3.) Significantly, any oral contract that occurred on April 6, 2010, would face an additional statute of limitations issue. The statute of limitations for territorial torts arising from a "contract or liability, express or implied," "except an action upon a sealed instrument," is six years. 5 V.I.C § 31(1)(C), (3)(A). Plaintiff filed his Complaint on April 8, 2016. (ECF No. 1.)

[12] Plaintiff's Complaint, First Amended Complaint ("FAC"), and the operative SAC all allege the oral contract occurred on April 8, 2010, sometime after 1:00 p.m. (ECF Nos. 1-2 at 3-4, 45 at 4-5, 65 at 4-5.)

*Cyril v. Carrero*
Case No. 1:16-cv-0017
Memorandum Opinion
Page 10 of 22

The existence of a contract is an element of both a breach of contract cause of action[13]

and a good faith and fair dealing cause of action.[14] The purpose of the Statute of Frauds is to

avoid situations—precisely like the one at hand—where the trier of fact is asked to

determine whether a high-value contract existed on the word of a witness alone. *Gordon v.*

*Heavy Materials, LLC*, No. ST-2017-CV-127, 2019 V.I. LEXIS 169, *20-21 (V.I. Super. Ct. Jan.

18, 2019) (noting that "[t]he principal substantive aim of the statute of frauds is to prevent

one party from defrauding another by seeking to enforce against him a contract that never

existed" and that the Statute of Frauds "seeks to protect contracting or negotiating parties

from the vagaries of the trial process" in which "a trier of fact may easily be fooled by

plausible but false testimony to the existence of an oral contract. . . . because it is extremely

difficult to determine whether a witness is testifying truthfully."). "Requiring parties to put

---

[13] Under Virgin Islands law, the elements of a breach of contract claim are: (1) "a contract existed," (2) "there was a duty created by that contract," and (3) "such duty was breached," and (4) "the party suffered damages as a result." *Merchants Com. Bank v. Oceanside Vill., Inc.*, 64 V.I. 3, 15 (V.I. Super. Ct. 2015); *see also Phillip v. Marsh-Monsanto*, 66 V.I. 612, 619 (2017) (defining the "first element" of a "breach of contract claims" as "an enforceable agreement"). In diversity actions, such as this one, the district court "must apply the substantive laws of the forum[.]" *Codrington v. Steadfast Ins. Co.*, 2 No. 23-2949, 2024 U.S. App. LEXIS 17901, at *14 (3d Cir. July 22, 2024).

[14] Under Virgin Islands law, the elements of a breach of good faith and fair dealing claim are, at minimum: "(1) a valid contract exists between the parties, (2) acts committed by the defendant amount to fraud or deceit or an unreasonable contravention of the parties' reasonable expectations under the contract; and (3) that damages [were] suffered as a result." *Mamouzette v. Jerome*, Civil No. 13-0117, 2024 U.S. Dist. LEXIS 90073 at *9, n.5 (D.V.I. June 13, 2024). This Court acknowledges that there is some lack of clarity on whether territorial courts accept *Chapman v. Cornwall*'s statements on the implied covenant of good faith and fair dealing requiring a showing of fraud or deceit as good law. *Compare* Canton v. V.I. Humanities Council, No. ST-12-CV-279, 2017 V.I. LEXIS 116, at *19 (V.I. Super. Ct. July 26, 2017) (stating that "[i]n *Merchants Commercial Bank v. Oceanside Village Inc.*, this Court determined *Chapman*'s holding concerning the implied duty of good faith and fair dealing is not dispositive because the V.I. Supreme Court did not conduct a *Banks* analysis" and not requiring a showing of fraud or deceit), *with Clark v. V.I. Hous. Auth.*, 75 V.I. 180, 188, n.34 (V.I. Super. Ct. Dec. 23, 2021) ("Additionally, in an at-will employment context, 'a successful claim . . . requires proof of acts amounting to fraud or deceit on the part of the employer.'" (citing *Chapman v. Cornwall*, 58 V.I. 431, 441 (V.I. 2013))). *Merchants Commercial Bank* merely dictates that "a party breaches the implied covenant of good faith and fair dealing by taking actions that deprive another party of the benefits for which it had bargained" pursuant to a contract. 64 V.I. at 34-35. However, regardless of whether this additional element is required, it is clear that a breach of good faith and fair dealing claim fundamentally requires a valid contract.

the terms of a contract in writing creates certainty and clarity for the Court, parties, and potential third-party beneficiaries." *Urh v. Buffo*, No. ST-2015-CV-0315, 2017 V.I. LEXIS 17, at *11 (V.I. Super. Ct. Feb. 3, 2017) ("A trier of fact may easily be fooled by plausible but false testimony to the existence of an oral contract.").

Defendants are correct that a contract "for the sale of goods for the price of $500 or more" is "not enforceable" absent "some writing sufficient to indicate that a contract for sale has been made between the parties and signed by the party against whom enforcement is sought." 11A V.I.C. § 2-201(1).[15] As Plaintiff has variously stated the value of the scrap metal to be $128,000 (ECF No. 1-2 at 4), $130,000 (ECF No. 200-3 at 19), and $138,000 (ECF No. 65 at 7-8), the alleged oral contract undisputedly would exceed this value threshold. If the alleged oral agreement is unenforceable, then Defendants are "entitled to judgment as a matter of law" on both Count Four, the breach of contract claim, and Count Five, the breach of good faith and fair dealing claim. Fed. R. Civ. P. 56(a); *see also Appleton v. Harrigan*, No. ST-10-CV-275, 2012 V.I. LEXIS 114, at *10 (V.I. Super. Ct. Dec. 6, 2012), *aff'd*, 61 V.I. 262 (V.I. 2014) ("Because any alleged oral installment purchase agreement is not enforceable, Plaintiff's claims for both breach of contract and breach of the duty of good faith and fair dealing fail.").

However, Plaintiff is also correct that a contract that does "not satisfy" these requirements "but which is valid in other respects is enforceable . . . with respect to goods . . . which have been received and accepted." *Id.* § 2-201(3)(c); *see also B.F. Hirsch, Inc. v. Enright*

---

[15] To be "sufficient," "[a]ll that is required is that the writing afford a basis for believing that the offered oral evidence rests on a real transaction." *Gordon v. Heavy Materials, LLC*, No. ST-2017-CV-127, 2019 V.I. LEXIS 169, *20 (V.I. Super. Ct. Jan. 18, 2019).

*Ref. Co.*, 577 F.Supp. 339 (D.N.J. 1983), *aff'd in part, vacated in part sub nom. B.F. Hirsch v. Enright Ref. Co.*, 751 F.2d 628 (3d Cir. 1984) (enforcing an oral contract for $111,175.84 worth of gold shipments accepted by the purchaser under § 2-201(3)(c) of New Jersey's codification of the UCC). Plaintiff makes two allegations that he claims are evidence of his partial performance. First, Plaintiff claims that the "receipts" provided by Plaintiff "constitute evidence" of the delivery of scrap metal to the barge pursuant to the alleged oral agreement between April 9, 2010, and the boat's departure. (ECF No. 204 at 4-5.) Second, Plaintiff claims that the barge departed St. Croix on April 11 or 12, 2010, as evidenced by the barge's demurrage charges, which supports a timeline that permitted Plaintiff to load additional scrap metal onto the barge pursuant to his alleged oral contract with Defendants rather than his subcontract with Jonas.[16] *Id.* at 3-4.

### 1. The Receipts

Plaintiff provided 31 pages of photographs containing the images of 155 individual receipts for scrap metal in support of his claim of partial performance. (ECF No. 197-1, 197-2.) Plaintiff stated in his deposition that these receipts are "the receipts for the trucks which were by the truck, as well as receipts for the weighing" and that he thinks that the receipts are "all the records for each of the truck loads[.]" (ECF No. 200-3 at 13-14.) Upon review of these receipts, in total 155 receipts: 67 receipts are dated April 8, 2010; 62 receipts are dated April 7, 2010; 20 receipts are dated April 6, 2010; 1 receipt is dated to August 7, 2009 and December 8, 2009, each; 3 receipts are undated; and 1 receipt is illegible. *See infra* Court's

---

[16] Demurrage is "the detention of a ship by the freighter beyond the time allowed for loading, unloading, or sailing." "Demurrage." *Merriam-Webster.com Dictionary*, Merriam-Webster, https://www.merriam-webster.com/dictionary/demurrage (last visited Mar. 9, 2026). Demurrages charges accrue when a ship or cargo remains at a port beyond the time allowed for loading, unloading, or sailing.

*Cyril v. Carrero*
Case No. 1:16-cv-0017
Memorandum Opinion
Page 13 of 22

Exhibit 1 (transcribing the date of each receipt). The parties do not dispute that delivery slips dated April 6, 7, and 8, 2010 "were for deliveries of scrap metal by [Plaintiff] under his contract with Jonas." (ECF No. 200-1 at 4.) That is because both parties agree that Plaintiff was initially providing scrap metal to Jonas on a subcontract. (204-1 at 2.) Thus, all of the receipts provided by Plaintiff support only a finding that he delivered metal to the Pier on days in which he concedes he was delivering scrap metal pursuant to his subcontract with Jonas, before he claims a separate oral contract was made with Defendants. Accordingly, the Court finds that there is no evidence of a delivery of scrap metal to the barge after April 8, 2010.

Thus, Defendants have borne their burden of "affirmatively show[ing] the absence of evidence in the record," *Honore*, 2024 U.S. Dist. LEXIS 165220, at *12, as it relates to any delivery of scrap metal to the barge after April 8, 2010, and Plaintiff's general claim that the receipts will vindicate his narrative of additional scrap metal deliveries to the barge under an alleged oral contract executed on April 9, 2010, does not fulfill his shifted burden to "designate specific facts showing that there *is* a genuine issue for trial." *Daubert*, 861 F.3d at 391.

### 2. The Demurrage Charges

Plaintiff also claims that the barge departed St. Croix on April 11 or 12, 2010, as evidenced by the barge's demurrage charges, in support of his narrative that he loaded the barge with additional scrap metal pursuant to an oral contract made on April 9, 2010. (ECF No. 204 at 3-4.) Specifically, Plaintiff argues that under Jonas' contract with Defendants, demurrage fees accrued at $5,000.00 per day beginning on March 29, 2010, and that 10.1166

days of demurrage fees must equate to a departure date of April 11 or 12, 2010. *Id.* at 3. The

Court observes that in contradiction to Plaintiff's Opposition, Plaintiff's SAC, the operative

pleading in this matter, alleges that the barge loading gate was closed at 5:30 p.m. on April 8

to take a survey of the weight, and that the next morning, Defendants "were nowhere to be

seen." (ECF No. 65 at 6). The Court finds this unexplained and blatant contradiction regarding

a factual event that should be within the Plaintiff's personal knowledge troubling.[17]

Defendants point to those same demurrage charges as evidence of an April 8, 2010

departure date, making any further loading of the barge at the Pier with additional scrap

metal an impossibility after that date. (ECF No. 200-1 at 2.) Jonas' contract with Defendants

does provide for a $5,000-a-day demurrage charge. (ECF No.198-3 at 3.) However, this fee is

incurred only "[i]n the event Sellers does not complete loading 4,500 MT in the maximum

four (4) days" at "a minimum rate of 1,500 MT per day, 24/7." *Id.* Per the contract, the loading

was "to commence in 11 days from the date of the effectiveness of this agreement." *Id.* The

effective date of the agreement was March 18, 2010. *Id.* at 1. Thus, loading was to start on

March 29, 2010, run for maximum four days at a minimum rate of 1,500 metric tons per day,

---

[17] In further contradiction, Plaintiff's affidavit alleges that the barge left on April 10, 2010, (ECF No. 204-3 at 1-2). Plaintiff's deposition testimony claimed that he was delivering scrap metal to the barge through April 11, 2010, (ECF No. 200-4 at 6, 8). Further, the Chitolie Affidavit, submitted by Plaintiff, appears to allege that all the events in question occurred on April 6, 2010. Courts have found evidence such as this—a Plaintiff's bare allegations unsupported by any further evidence—to be "no more than a scintilla of evidence." *See also Kwanzaa v. Tell*, No. 2019-16052, 2021 U.S. Dist. LEXIS 70110, at *5 (D.N.J. Apr. 12, 2021), *aff'd*, No. 21-1939, 2022 U.S. App. LEXIS 30909 (3d Cir. Nov. 8, 2022) (granting summary judgment to a defendant where the plaintiff "simply reiterate[d]" the allegations made "at the pleading stage" to "establish a genuine dispute of fact" and holding that such "allegation[s]" are "not evidence"); *see also Saldana v. Kmart Corp.*, 260 F.3d 228 (3d Cir. 2001) (granting summary judgment to a defendant where "[plaintiff]'s case rests solely on speculation that events unfolded in such a way as to render [defendant liable]."). Plaintiff's "scintilla of evidence"—Plaintiff's varying reiterations of the allegations in his pleadings—is insufficient to rebut Defendants' robust documentation that the barge departed on April 8, 2010. *SodexoMAGIC, LLC*, 24 F.4th at 203-04 ("'the mere existence of a scintilla of evidence' favoring the non-moving party will not prevent summary judgment."); *see also Gunning v. Cooley*, 281 U.S. 90, 94 (1930) ("A mere scintilla of evidence is not enough to require the submission of an issue to the jury.").

and then would incur demurrage charges if the loading was not completed at this rate, in this amount, within the number of allotted dates per weight. *Id.* at 3.

Defendants additionally identify a final accounting email that they sent to Jonas, which noted that "on the basis of 1,808.260 mt" total loaded on the barge, "Jonas [wa]s allowed 1.20533 days to load [at the minimum loading rate of 1,500 mt per day], but took 10.16666 days to load," thus leading to a differential of "8.961111 days @ usd$5000.00"—a demurrage charge of 8.961111 days. (ECF No. 199-4 at 1.) This email also recounted the loading time "started counting on Monday March 29th at 1300 hrs and stopped counting on April 8th at 1700 hrs." *Id.* Thus, Defendants have borne their burden of demonstrating the absence of a genuine dispute of material fact as it relates to the departure date of the barge,[18] and Plaintiff's claims that the math simply adds up differently does not fulfill their shifted burden to "designate specific facts showing that there *is* a genuine issue for trial." *Daubert*, 861 F.3d at 391.

In sum, viewing all facts "in the light most favorable to the non-moving party, and draw all reasonable inferences in that party's favor," *Curto v. A Country Place Condominium Ass'n., Inc.*, 921 F.3d 405, 409 (3d Cir. 2019), the Court finds that Defendants have "affirmatively show[n] the absence of evidence in the record," *Honore*, 2024 U.S. Dist. LEXIS 165220, at *12, of an enforceable oral contract. There is no evidence that any scrap metal was delivered to the barge after April 8, 2010, pursuant to an alleged oral contract executed

---

[18] A barge departure date of April 8, 2010 is also supported by the "Draft Survey Report" submitted by Defendants, which weighed the "final" displacement of the barge—and thus measuring the weight of the cargo—on April 8, 2010. (ECF No. 199-4 at 15.) The former Manager of the St. Croix Office of SGS, who conducted the draft survey and wrote the draft survey report, testified at his deposition that the final draft was taken when the barge was "all closed up and ready to go." (ECF No. 198-2 at 6.) A packing slip dated April 8, 2010 and signed by Jonas also acknowledged 1808 metric tons of scrap metal loaded onto the barge at the Pier. (ECF No. 199-4 at 16.)

*Cyril v. Carrero*
Case No. 1:16-cv-0017
Memorandum Opinion
Page 16 of 22

between the parties on April 9, 2010. Additionally, the barge's departure date of April 8, 2010, makes such any such delivery of additional scrap metal a metaphysical impossibility. *Daubert,* 861 F.3d at 391 (stating that the non-moving party must "do more than 'simply show that there is some metaphysical doubt as to the material facts.'"). Accordingly, the Court finds that there is no evidence of the barge's presence at the Pier after April 8, 2010, or a delivery of scrap metal to the barge after April 8, 2010, upon which a reasonable jury could make a finding of partial performance under the alleged oral contract. *SodexoMAGIC, LLC*, 24 F.4th at 203. Absent an enforceable contract to fulfill the required elements of both Count Four, the breach of contract claim, and Count Five, the breach of good faith and fair dealing claim, Defendants are "entitled to judgment as a matter of law" on those counts. Fed. R. Civ. P. 56(a); *see also Appleton*, 2012 V.I. LEXIS 114, at *10 ("Because any alleged oral installment purchase agreement is not enforceable, Plaintiff's claims for both breach of contract and breach of the duty of good faith and fair dealing fail.").

### B.    Statute of Limitations

Judge Lewis previously permitted the three tort claims in this action to proceed based on finding no plain error in Magistrate Judge Cannon's determination that it was premature to preclude the torts claims given the question of an existence of oral contract and it being unclear at that stage of the proceedings if the "gist of the action" sounded in contract claims or tort claims.[19] *Cyril*, 2022 U.S. Dist. LEXIS 125067, at *31-32, ECF No. 118 at 23-25. This

---

[19] The Court further notes that the U.S. Virgin Islands Supreme Court no longer recognizes the "gist of the action" doctrine as cognizable claim under Virgin Islands law. *Robertson v. Banco Popular de Puerto Rico,*, 77 V.I. 574, 590-99 (2023).

ruling was based upon the arguments of the parties of the time, which raised neither the enforceability issue regarding the alleged oral contract or any statute of limitations issues.

Defendants now claim that Plaintiff's tort claims—conversion (Count Two), fraudulent misrepresentation (Count Three), and intentional infliction of emotional distress (Count Six)—must be dismissed because they were "brought after the running of the applicable statute of limitations." (ECF No. 200 at 9.) Plaintiff did not respond to this argument in his Opposition.

In diversity actions, such as this one, the district court "must apply the substantive laws of the forum, which include statutes of limitations." *Codrington v. Steadfast Ins. Co.*, No. 23-2949, 2024 U.S. App. LEXIS 17901, at *14 024 WL 3493449 at *6 (3d Cir. July 22, 2024). Under territorial law, the statute of limitations for torts, defined as "any injury to the person or rights of another not arising on contract," is two years. 5 V.I.C § 31(5)(A); *see also Emanuel v. Great Am. Ins. Co.*, Civil No. 75-482, 1976 U.S. Dist. LEXIS 16125, at *4 (D.V.I. Mar. 16, 1976) ("[I]t is plain to this Court that plaintiff's complaint sounds partially in tort, [and] that the tort claims fall squarely within 5 V.I.C. § 31(5)(A)[.]"). "The traditional rule is that the Statute of Limitations on any cause of action generally begins to run on the occurrence of the essential facts that give rise to that cause of action." *Burton v. First Bank of Puerto Rico*, 49 V.I. 16, 20 (Super. Ct. 2007). Thus, for any of these events that Plaintiff alleges occurs between April of 2010, when the barge was loaded with scrap metal and departed from St. Croix, and May of 2010, when Plaintiff "demanded return" of his scrap metal (ECF No. 65 at 4-6, 8), Plaintiff was required to file his suit by April or May of 2012 within the applicable statute of limitations. This action was filed on April 8, 2016, nearly six years after the events

in question. (ECF No. 1.) There can be no question that these tort claims were not brought within the applicable statute of limitations, or, given the nature of the claims, that Plaintiff was not aware of his potential claims at the time that they arose. Accordingly, the Court will grant summary judgment in favor of Defendants on Plaintiff's torts claims as alleged in Counts Two, Three and Six.

## IV.    CONCLUSION

For the reasons stated above, the Court will grant Defendants Jose Carrero and Caribbean Scrap Metal's Motion for Summary Judgment, ECF No. 196, and grant summary judgment in Defendants' favor on the five remaining claims in Plaintiff's Second Amended Complaint, ECF No. 65. Summary judgment is granted on the two contractual counts, breach of contract and breach of good faith and fair dealing, due to the absence of a genuine dispute as to the existence of an enforceable oral contract. Summary judgment is granted on the three tort counts: conversion; fraudulent misrepresentation; and intentional infliction of emotional distress, due to the two-year statute of limitations having run approximately four years before Plaintiff George T. Cyril, Sr. brought his suit. The Court will also grant Defendants leave to file a motion for attorney's fees and costs in accordance with the appropriate federal rules of civil procedure.

An appropriate Order accompanies this Memorandum Opinion.

**Dated:** March 9, 2026                                    */s/ Robert A. Molloy*
                                                            **ROBERT A. MOLLOY**
                                                            **Chief Judge**

**EXHIBIT 1**

The below chart transcribes the date on each of Plaintiff's receipts for scrap metal delivery as submitted to the Court.

| Photo No. | Docket No. | Page No. | Position on Page | Date |
|---|---|---|---|---|
| 1 | 197-1 |  | Left | 04-06-10 |
| 2 | 197-1 | 1 | Middle | 04-07-10 |
| 3 | 197-1 |  | Right | 04-07-10 |
| 4 | 197-1 |  | Left | 04-07-10 |
| 5 | 197-1 | 2 | Middle | 04-07-10 |
| 6 | 197-1 |  | Right | 04-07-10 |
| 7 | 197-1 |  | Left | 04-07-10 |
| 8 | 197-1 | 3 | Middle | 04-07-10 |
| 9 | 197-1 |  | Right | 04-07-10 |
| 10 | 197-1 | 4 | Left | 04-06-10 |
| 11 | 197-1 |  | Right | 04-06-10 |
| 12 | 197-1 |  | Left | no date |
| 13 | 197-1 | 5 | Middle | 04-07-10 |
| 14 | 197-1 |  | Right | 04-06-10 |
| 15 | 197-1 | 6 | n/a | 04-08-10 |
| 16 | 197-1 | 7 | Left | 12-08-09 |
| 17 | 197-1 |  | Right | 08-07-09 |
| 18 | 197-1 |  | Upper Left | 04-08-10 |
| 19 | 197-1 |  | Upper Middle | 04-07-10 |
| 20 | 197-1 | 8 | Upper Right | illegible |
| 21 | 197-1 |  | Bottom Left | 04-08-10 |
| 22 | 197-1 |  | Bottom Right | 04-08-10 |
| 23 | 197-1 |  | Upper Left | 04-08-10 |
| 24 | 197-1 |  | Upper Middle | 04-08-10 |
| 25 | 197-1 |  | Upper Right | 04-08-10 |
| 26 | 197-1 | 9 | Bottom Left | 04-08-10 |
| 27 | 197-1 |  | Bottom Middle | 04-08-10 |
| 28 | 197-1 |  | Bottom Right | 04-07-10 |
| 29 | 197-1 |  | Upper Left | 04-08-10 |
| 30 | 197-1 |  | Upper Middle | 04-08-10 |
| 31 | 197-1 |  | Upper Right | 04-08-10 |
| 32 | 197-1 | 10 | Bottom Left | 04-08-10 |
| 33 | 197-1 |  | Bottom Middle | 04-08-10 |
| 34 | 197-1 |  | Bottom Right | 04-08-10 |
| 35 | 197-1 |  | Upper Left | 04-08-10 |
| 36 | 197-1 | 11 | Upper Middle | 04-08-10 |
| 37 | 197-1 |  | Upper Right | 04-08-10 |

*Cyril v. Carrero*
Case No. 1:16-cv-0017
Memorandum Opinion
Page 20 of 22

| Photo No. | Docket No. | Page No. | Position on Page | Date |
|---|---|---|---|---|
| 38 | 197-1 | | Bottom Left | 04-08-10 |
| 39 | 197-1 | | Bottom Middle | 04-08-10 |
| 40 | 197-1 | 11 | Bottom Right | 04-07-10 |
| 41 | 197-1 | | Upper Left | 04-08-10 |
| 42 | 197-1 | | Upper Middle | 04-08-10 |
| 43 | 197-1 | | Upper Right | 04-08-10 |
| 44 | 197-1 | 12 | Bottom Left | 04-08-10 |
| 45 | 197-1 | | Bottom Middle | 04-08-10 |
| 46 | 197-1 | | Bottom Right | 04-08-10 |
| 47 | 197-1 | | Upper Left | no date |
| 48 | 197-1 | | Upper Middle | 04-08-10 |
| 49 | 197-1 | | Upper Right | 04-08-10 |
| 50 | 197-1 | 13 | Bottom Left | 04-08-10 |
| 51 | 197-1 | | Bottom Middle | 04-08-10 |
| 52 | 197-1 | | Bottom Right | 04-08-10 |
| 53 | 197-1 | | Upper Left | 04-08-10 |
| 54 | 197-1 | | Upper Middle | 04-08-10 |
| 55 | 197-1 | | Upper Right | 04-08-10 |
| 56 | 197-1 | 14 | Bottom Left | 04-08-10 |
| 57 | 197-1 | | Bottom Middle | 04-08-10 |
| 58 | 197-1 | | Bottom Right | 04-08-10 |
| 59 | 197-1 | | Upper Left | 04-08-10 |
| 60 | 197-1 | | Upper Middle | 04-08-10 |
| 61 | 197-1 | | Upper Right | 04-08-10 |
| 62 | 197-1 | 15 | Bottom Left | 04-08-10 |
| 63 | 197-1 | | Bottom Middle | 04-08-10 |
| 64 | 197-1 | | Bottom Right | 04-08-10 |
| 65 | 197-2 | | Upper Left | 04-08-10 |
| 66 | 197-2 | | Upper Middle | 04-08-10 |
| 67 | 197-2 | | Upper Right | 04-08-10 |
| 68 | 197-2 | 1 | Bottom Left | 04-08-10 |
| 69 | 197-2 | | Bottom Middle | 04-08-10 |
| 70 | 197-2 | | Bottom Right | 04-08-10 |
| 71 | 197-2 | | Upper Left | 04-06-10 |
| 72 | 197-2 | | Upper Middle | 04-06-10 |
| 73 | 197-2 | | Upper Right | 04-06-10 |
| 74 | 197-2 | 2 | Bottom Left | 04-06-10 |
| 75 | 197-2 | | Bottom Middle | 04-06-10 |
| 76 | 197-2 | | Bottom Right | 04-08-10 |
| 77 | 197-2 | | Upper Left | 04-07-10 |
| 78 | 197-2 | 3 | Upper Middle | 04-07-10 |
| 79 | 197-2 | | Upper Right | 04-07-10 |

*Cyril v. Carrero*
Case No. 1:16-cv-0017
Memorandum Opinion
Page 21 of 22

| Photo No. | Docket No. | Page No. | Position on Page | Date |
|-----------|-----------|----------|------------------|------|
| 80 | 197-2 | | Bottom Left | 04-06-10 |
| 81 | 197-2 | | Bottom Middle | 04-06-10 |
| 82 | 197-2 | 3 | Bottom Right | 04-06-10 |
| 83 | 197-2 | | Upper Left | 04-07-10 |
| 84 | 197-2 | | Upper Middle | 04-07-10 |
| 85 | 197-2 | | Upper Right | 04-07-10 |
| 86 | 197-2 | 4 | Bottom Left | 04-07-10 |
| 87 | 197-2 | | Bottom Middle | 04-07-10 |
| 88 | 197-2 | | Bottom Right | 04-07-10 |
| 89 | 197-2 | | Upper Left | 04-07-10 |
| 90 | 197-2 | | Upper Middle | 04-07-10 |
| 91 | 197-2 | | Upper Right | 04-07-10 |
| 92 | 197-2 | 5 | Bottom Left | 04-07-10 |
| 93 | 197-2 | | Bottom Middle | 04-07-10 |
| 94 | 197-2 | | Bottom Right | 04-07-10 |
| 95 | 197-2 | | Upper Left | 04-07-10 |
| 96 | 197-2 | | Upper Middle | 04-07-10 |
| 97 | 197-2 | | Upper Right | 04-07-10 |
| 98 | 197-2 | 6 | Bottom Left | 04-07-10 |
| 99 | 197-2 | | Bottom Middle | 04-07-10 |
| 100 | 197-2 | | Bottom Right | 04-07-10 |
| 101 | 197-2 | | Upper Left | 04-07-10 |
| 102 | 197-2 | | Upper Middle | 04-07-10 |
| 103 | 197-2 | | Upper Right | 04-07-10 |
| 104 | 197-2 | 7 | Bottom Left | 04-07-10 |
| 105 | 197-2 | | Bottom Middle | 04-07-10 |
| 106 | 197-2 | | Bottom Right | 04-07-10 |
| 107 | 197-2 | | Upper Left | 04-06-10 |
| 108 | 197-2 | | Upper Middle | 04-07-10 |
| 109 | 197-2 | | Upper Right | 04-07-10 |
| 110 | 197-2 | 8 | Bottom Left | 04-07-10 |
| 111 | 197-2 | | Bottom Middle | 04-07-10 |
| 112 | 197-2 | | Bottom Right | 04-07-10 |
| 113 | 197-2 | | Upper Left | 04-06-10 |
| 114 | 197-2 | | Upper Middle | 04-06-10 |
| 115 | 197-2 | | Upper Right | no date |
| 116 | 197-2 | 9 | Bottom Left | 04-06-10 |
| 117 | 197-2 | | Bottom Middle | 04-06-10 |
| 118 | 197-2 | | Bottom Right | 04-06-10 |
| 119 | 197-2 | | Upper Left | 04-06-10 |
| 120 | 197-2 | 10 | Upper Middle | 04-08-10 |
| 121 | 197-2 | | Upper Right | 04-08-10 |

*Cyril v. Carrero*
Case No. 1:16-cv-0017
Memorandum Opinion
Page 22 of 22

| Photo No. | Docket No. | Page No. | Position on Page | Date |
|---|---|---|---|---|
| 122 | 197-2 | | Bottom Left | 04-08-10 |
| 123 | 197-2 | | Bottom Middle | 04-08-10 |
| 124 | 197-2 | | Bottom Right | 04-08-10 |
| 125 | 197-2 | | Upper Left | 04-07-10 |
| 126 | 197-2 | | Upper Middle | 04-07-10 |
| 127 | 197-2 | 11 | Upper Right | 04-07-10 |
| 128 | 197-2 | | Bottom Left | 04-08-10 |
| 129 | 197-2 | | Bottom Middle | 04-08-10 |
| 130 | 197-2 | | Bottom Right | 04-08-10 |
| 131 | 197-2 | | Upper Left | 04-07-10 |
| 132 | 197-2 | | Upper Middle | 04-07-10 |
| 133 | 197-2 | 12 | Upper Right | 04-07-10 |
| 134 | 197-2 | | Bottom Left | 04-07-10 |
| 135 | 197-2 | | Bottom Middle | 04-07-10 |
| 136 | 197-2 | | Bottom Right | 04-07-10 |
| 137 | 197-2 | 13 | n/a | 04-07-10 |
| 138 | 197-2 | | Upper Left | 04-07-10 |
| 139 | 197-2 | | Upper Middle | 04-07-10 |
| 140 | 197-2 | 14 | Upper Right | 04-07-10 |
| 141 | 197-2 | | Bottom Left | 04-07-10 |
| 142 | 197-2 | | Bottom Middle | 04-07-10 |
| 143 | 197-2 | | Bottom Right | 04-07-10 |
| 144 | 197-2 | | Upper Left | 04-08-10 |
| 145 | 197-2 | | Upper Middle | 04-08-10 |
| 146 | 197-2 | 15 | Upper Right | 04-06-10 |
| 147 | 197-2 | | Bottom Left | 04-08-10 |
| 148 | 197-2 | | Bottom Middle | 04-07-10 |
| 149 | 197-2 | | Bottom Right | 04-07-10 |
| 150 | 197-2 | | Upper Left | 04-08-10 |
| 151 | 197-2 | | Upper Middle | 04-08-10 |
| 152 | 197-2 | 16 | Upper Right | 04-08-10 |
| 153 | 197-2 | | Bottom Left | 04-08-10 |
| 154 | 197-2 | | Bottom Middle | 04-08-10 |
| 155 | 197-2 | | Bottom Right | 04-08-10 |